STATE *vs.* THOMAS E. FLEMMING.

Penobscot, 1876.—February 15, 1877.

*Jurors. Abatement.*

An indictment found by a grand jury drawn by virtue of venires not having the seal of the court upon them, is illegal and void; and the defect is one which cannot be cured by amendment, or by special act of the legislature.

In a criminal case a plea in abatement is sufficient, if it is free from duplicity and states a valid ground of defense to an indictment in language sufficiently clear not to be misunderstood: the strictest technical accuracy, such as is sometimes required in purely dilatory pleas in civil suits, will *not* be exacted.

ON EXCEPTIONS.

INDICTMENT charging the defendant with being a common seller of intoxicating liquors at Bangor, in the county of Penobscot, on

the first day of September, A. D. 1875, and to the time of finding the indictment at the February term, A. D. 1876.

(Signed.) A true bill. Emore C. Smart, Foreman.

The defendant seasonably filed the following plea in abatement:

"STATE OF MAINE.

Penobscot Scilicet: Supreme Judicial Court, for the State of Maine, and at the February term thereof, in the year of our Lord one thousand eight hundred and seventy-six, for the transaction of criminal business.

State of Maine, by indictment against Thomas E. Flemming.

And on the sixth day of March in the year of our Lord one thousand eight hundred and seventy-six.

And now the said Thomas E. Flemming, in his own proper person, cometh into said court, and having heard the said indictment against him read saith, that the said State of Maine ought not to further prosecute the said indictment against him, the said Thomas E. Flemming, because, he saith, that Emore C. Smart, of Bangor, in said county of Penobscot, who at said February term of said court, did serve and act in finding and returning said indictment into said court, at said February term thereof, as one of the grand jurors by whom said indictment at the said term of said court was found and returned into said court, at said term thereof, which said indictment so as aforesaid found, was returned into said court as aforesaid, on the eleventh day of February, in the year of our Lord one thousand eight hundred and seventy-six, was not, at the time he so served and acted as aforesaid, and at the time said indictment was found and returned as aforesaid, duly and legally qualified to serve as said grand juror, in this: that said Emore C. Smart was drawn as said grand juror, pursuant to and in obedience to a supposed writ of venire facias, which said supposed writ of venire facias, was issued from said court, by Ezra C. Brett, clerk thereof, on the second day of August, in the year of our Lord one thousand eight hundred and seventy-five, and was not at the time it was so issued, nor at the time said Smart was so drawn as said grand juror, under the seal of said court, which said supposed writ of venire facias, with the return thereon, said Thomas E. Flemming, here produces now in court, which said sup-

posed writ of venire facias is in words and figures as follows, viz : [Here follows the venire signed by E. C. Brett, clerk.] with return upon said supposed writ of venire facias, in words and figures as follows, to wit : [Here follows the return signed George A. Bolton, constable of Bangor.]

Without this that said Smart was drawn as said grand juror, pursuant to any venire, except said supposed writ of venire facias, hereinbefore set forth in this plea.

And this the said Thomas E. Flemming is ready to verify.

Wherefore the said Thomas E. Flemming prays judgment of said indictment, and that the same may be quashed.

(Signed.)                              *Thomas E. Flemming.*

STATE OF MAINE, PENOBSCOT, ss., SUPREME JUDICIAL COURT, February term, in the year of our Lord one thousand eight hundred and seventy six, and for the transaction of criminal business.

State of Maine by indictment against Thomas E. Flemming.

Personally appeared this sixth day of March in the year of our Lord one thousand eight hundred and seventy-six, the beforenamed said Thomas E. Flemming, respondent, in said indictment, and made oath that the foregoing plea by him subscribed is true in substance and in fact.

Before me,   *James F. Rawson,* Justice of Peace and Quo."

To the plea in abatement, the county attorney demurred generally ; the defendant joined.   The court sustained the demurrer, adjudged the plea in abatement bad, and ordered judgment for the state, ruling that the defendant could not plead over.   The defendant alleged exceptions.

At the same February term, the grand jury returned a large number of other indictments for violations of the liquor law ; and when it was discovered that the venires for the grand jury had been issued without the seal of the court upon them, it was claimed that this defect was fatal to the validity of the indictments; on application, the legislature then in session, passed an act declaring the indictments valid.   A motion was also made to have the venires amended by affixing a seal to them.   These questions were also submitted to the law court.

*J. Varney,* for the defendant, argued the unconstitutionality of the healing act, and *F. H. Appleton,* on the same side, the sufficiency of the plea in abatement.

Mr. Varney, *inter alia,* said the indictment against the respondent was found February 11, 1876, and on February 22, the legislature on the morning hour of the last day of its session, under a suspension of its rules, after the respondent had been brought to the bar, and without notice to him, and for the purpose of affecting and deciding his case, passed the following act, entitled "an act to make valid the drawing of grand jurors for the county of Penobscot."

"SEC. 1. The venires issued for draft of grand jurors to serve at the supreme judicial court, within and for the county of Penobscot, for the year of our Lord eighteen hundred seventy-five and eighteen hundred and seventy-six, are hereby made valid and lawful venires, notwithstanding the same were issued without the seal of the court thereon ; and no act or presentment of said grand jurors shall in any wise be invalidated in law by reason of any such defect in issuing said venires.

SEC. 2. This act shall take effect when approved."

This is the act and its title, passed to affect this case and decide it.

A great man of New England in the discussion of a constitutional question, which has been accounted in all its bearings, the most important one ever mooted in any forum in this country, said, "words are things, and things of mighty influence in the discussion of legal and political questions, because a just conclusion is often avoided or a false one reached, by the adroit substitution of one phrase or one word for another."

And we suggest that instead of the title which the legislature gave to this act, many other titles, much more significant of its intended scope and effect, and much more suggestive of its vicious character might be given it.

For example would it not be as well to entitle it, an act :

"To make good a void indictment."

"To make that a grand jury which was not when it acted."

"To hold and punish a man criminally arraigned who otherwise could not be held."

"To deprive a respondent, in a pending criminal case, of a plea."

"To make good a void writ, because the court which issued it will not."

"To modify and change, in a particular pending case, the general and standing law of the state."

"To suspend as to Penobscot county, in the years 1875 and 1876, the law applicable in those years to all other counties, and applicable to that county in all other years."

"To, by retrospective action, invade the judicial province, and decide a pending case."

All these things, if the act is applicable to this case, it must do.

*Mr. Appleton*, in support of the various points of his argument on the plea in abatement, cited : 2 Lil. Ent. 675. 2 Tidd Pr. 714. 5 Bac. Abr. pp. 377 and 380. 2 Hale's P. C. 260-1, 471. 2 Hawk, P. C. 277, 347, 371, 571-2. *State* v. *Lightbody*, 38 Maine, 200. R. S., c. 106, § 7, 9, &c. ; c. 134, § 1, &c., § 18 ; c. 77, § 4. *Bailey* v. *Smith*, 12 Maine, 196. *Tibbetts* v. *Shaw*, 19 Maine, 204. *Hall* v. *Jones*, 9 Pick. 446. *Smith* v. *Alston*, 1 Rep. Con. Ct. 104. *Governor* v. *McRhea*, Hawkes, 226. *Filkins* v. *Brockway*, 19 Johns. 170. *Brewer* v. *Sibley*, 13 Met. 175. *State* v. *McElroy*, 3 Strobh. S. C. 33. *Garland* v. *Britton*, 12 Ill. 232. *State* v. *Drake*, 36 Maine, 366. *McQuillen* v. *State*, 8 S. & M. 587. *Rawls* v. *State*. 8 S. & M. 1 Tidd. Pr. 583, 584, 589, 661. 1 Ld. Raym. 593. Willes, 479. *Colburn* v. *Tolles*, 13 Conn. 527. 1 Chitty Pl. 366, 454-6, 460, 466. *State* v. *Middleton*, 5 Port. 491. 2 Saund. 209, a. (note 1.) 10 East. 87, (note.) Stephen Pl. 161, 423, 437. 1 Saund. Pl. 4. Gould Pl. 271, 397, and c. 5, § 142. 1. Bac. Abr. 37 and 38, 223-227, (§) 237. *Baker* v. *State*, 23 Miss. 244. *State* v. *Williams*, 5 Port. 130. *Lynes* v. *State*, 5 Port. 236. 2 Wharton's Indictments, § 1158. *State* v. *Ward*, 63 Maine, 225. 2 Saund. Pl. 297. 2 Salk. 497. *Findley* v. *People*, 1 Mich. 234. 3 Bla. Com. 303. 1 Lil. Ent. 1. 3 Chitty Pl. 896. 3 M. & S. 154. 1 Sellon's Pr. 273. *Eichorn* v. *LeMaitre*, 2 Wils. 366. 2 Bl. R. 368. *Tompson* v. *Colin*, Yelv. 112. *Hazzard* v. *Haskell*, 27 Maine, 549. *Fogg* v. *Fogg*, 31 Maine, 302. *Burnham* v. *Howard*, 31 Maine, 569. *Southard* v. *Hill*, 44 Maine, 92, 95. *Severy* v. *Nye*, 58 Maine, 246. *McKeen* v. *Par-*

*ker,* 51 Maine, 389. *Lovell* v. *Sabin,* 15 N. H. 29. *Dearborn* v. *Twist,* 6 N. H. 44. *Ritler* v. *Hamilton,* 4 Texas, 325. *Kendrick* v. *Davis,* 3 Coldw. Tenn. 524. 4 Maine, 439, (Low's case.) *State* v. *Burlingham,* 15 Maine, 104. *State* v. *Symonds,* 36 Maine, 128. *State* v. *Clough,* 49 Maine, 573. *U. S.* v. *Coolidge,* 2 Gall. 363. 2 Ld. Raym. 1307. 5 Saund. 376. Yelv. 204.

*J. Hutchings,* county attorney, for the state, argued that the healing act was constitutional and cited largely from the text and the cases collected in Cooley's Constitutional Limitations.

*L. A. Emery,* attorney general, on the same side, argued that the defective omission of the seal was amendable, and that the plea in abatement was insufficient; he said:

The allegation in the plea is not that the grand juror was not properly summoned, but is simply that the person did not possess the requisite qualifications. The words of the plea are, "was not duly and legally qualified to serve as grand juror." These words have reference to the qualifications of the individual, not to correctness of the procedure in summoning.

A person is qualified to testify as a witness, not by virtue of a *subpœna,* but by possessing a sound mind, and being of age and of knowledge.

A person is qualified to vote not by the warrant summoning him to the polls, but by being invested with the qualities prescribed by the constitution.

A person is qualified for military service by possessing sufficient soundness of body and being between certain years of age, and this even in time of peace.

A person is "duly and legally qualified to serve as grand juror, not by virtue of an indented paper, passing between two other persons, but by reason of having been selected by his town, and his name placed upon the jury list or in the jury box, and being a citizen."

The plea in abatement therefore is *bad,* because it does not show the court what personal qualification is wanting; bad for want of sufficient allegation.

The specification following the general allegation, does not conform to it. The general allegation is non-qualification, in the

sense I have named; the specification is of an omission not in any qualities to be possessed by a grand juror, but of an omission in a paper issued by the clerk to a constable.

The general allegation is one of law, an assumption of a legal conclusion from data not disclosed. In other words, there is not in the plea any direct allegation of matters of fact, such as is required in such a plea.

The facts contained in the specification are not alleged directly, but only parenthetically, as a sort of rider to the main allegation.

Pleas in abatement must be single. Two causes of abatement cannot be joined. The respondent is not allowed to allege want of qualification, and also irregularity in process. In this respect the plea is bad for duplicity.

The respondent should have alleged that Smart was not duly selected or summoned; then this specification would perhaps have supported the allegation. As it is, the facts incidentally named do not support his legal proposition. He prays the abatement of the indictment because Smart was not a qualified person. He makes no prayer because of the want of a seal. He recites the want of a seal, but does not base his prayer on that.

*Mr. Appleton,* in reply.

I. Venire not a part of the record, and need not be pleaded as such. *State* v. *Carver,* 49 Maine, 588, 592.

II. Venire not being under seal, profert is unnecessary and will be regarded as surplusage. 1 Chitty Pl. 365-6, and other authorities cited in argument in chief.

III. If profert is not properly made, the state should have pleaded *non est factum,* craved oyer or demurred specially. 1 Chitty Pl. 365-6.

WALTON, J. The defendant is indicted for being a common seller of intoxicating liquors without a license. The indictment was found by a grand jury drawn by virtue of venires not having the seal of the court upon them. He pleads this fact in abatement, and prays that the indictment may be quashed.

I. *Was a seal necessary.* Undoubtedly. The question is *res judicata* in this state. It was decided in *State* v. *Lightbody,* 38

Maine, 200. The court there held, not only that a seal was necessary, but that the doings of a grand jury drawn by virtue of venires not having the seal of the court upon them, were illegal and void, and liable to be quashed on motion. That a seal is necessary upon venires for grand jurors, is not, therefore, an open question in this state.

II. *Is the defect amendable.* We think not. Every indictment, to be valid, must be found by a grand jury legally selected, and competent to act at the time the indictment is found. So decided in *State* v. *Symonds*, 36 Maine, 128.

To put a seal upon these venires now, would not make sealed instruments of them at the time they were served. They have performed their office and are *functi officio.* To seal them now, and then hold that they were legal instruments when served, and when they had no seals upon them, would seem more like trifling, than the performance of a grave and important duty.

Besides, this court has three times decided that the seal upon a writ is matter of substance and not amendable. *Bailey* v. *Smith*, 12 Maine, 196. *Tibbetts* v. *Shaw*, 19 Maine, 204. *Witherel* v. *Randall*, 30 Maine, 168.

And the same point has been decided the same way in Massachusetts. *Hall* v. *Jones*, 9 Pick. 446.

In one case in this state, where the clerk omitted to affix the seal of the court to an execution, he was allowed to do so after it had been levied upon real estate. *Sawyer* v. *Baker*, 3 Maine, 29. But the court afterwards refused to allow a justice of the peace to make a like amendment; and referred to the above decision as having been made upon an *ex-parte* motion; from which we infer that the court did not regard it as a reliable authority. *Porter* v. *Haskell*, 11 Maine, 177.

"So long as a seal is required to be affixed to writs and executions," said Mellen, C. J., in the case last cited, "though we may not be able to discover its real use, yet we must not dispense with what the law requires."

And in an early case in Massachusetts, the court said that, while a strict adherence to technical forms might be inconvenient in particular cases, and might even appear at times to be beneath

the dignity of the law, still, it is essential to the correct administration of justice that some forms and methods of proceeding be observed ; that if the court felt at liberty to depart from the existing forms, still, there would be a point at which it must stop at last ; and then it would be found no easier to comply with the new forms than with those which have been so long known and settled ; and the inconvenience would not be less than is now experienced when indictments and other proceedings should be quashed for a departure from such new forms. *Commonwealth* v. *Stockbridge,* 11 Mass. 279.

A distinction has sometimes been made between original and judicial writs, using the latter term to distinguish such writs as issue during the progress of a suit from those by which suits are commenced. And it has been said that while executions and other strictly judicial writs may be amended by having the seal of the court affixed to them, original writs cannot be thus amended. Such a distinction is referred to in *Bailey* v. *Smith,* 12 Maine, 196.

But this distinction, if it exists, is not favorable to the proposed amendment in this case. Writs of *venire facias* for grand jurors are not judicial writs, in that technical sense in which the term is used to distinguish such writs as issue during the progress of a suit from those by which suits are commenced. They more nearly resemble original writs, which, it has been held, cannot be thus amended.

But we think the distinction is a very shadowy one, and we attach no importance to it in this case. We rest our decision upon the broad principle that in criminal prosecutions all the proceedings should be strictly according to law ; and that when the law requires a writ to be sealed before it is served, sealing it after it has been served, is not a compliance with the law.

III. *Is the plea in abatement sufficient in form.* We think it is. It states the ground of objection to the indictment in language too clear to be misunderstood by any one. Nothing more should be required in criminal cases. The strictest technical accuracy, such as has sometimes been required in purely dilatory pleas in civil suits, should not be exacted in criminal cases. If the plea

states a valid ground of defense in language too clear to be misunderstood, and is free from duplicity, nothing more should be required. In such cases the maxim, *aucupia verborum sunt judice indigna*—a twisting of language is unworthy of the court—is particularly applicable. To require a degree of exactness which it is practically impossible to comply with, would be, in effect, a denial of the right to file such a plea at all. We think the plea is suffiient in form.

IV. We now come to the last and perhaps the most important question in the case. Pending this indictment, and in advance of the judgment of the court upon its sufficiency, the legislature passed an act declaring the venires for the grand jurors, by whom it was found, valid, notwithstanding they were issued without the seal of the court upon them ; and declaring further that no act or presentment of said grand jurors should be in any wise invalidated by reason of such defect. *Special Laws* 1876, c. 307.

Can such legislation be sustained ? Is it within the constitutional authority of the legislature to enact that indictments already pending shall be valid, notwithstanding they have been found by a grand jury not legally drawn ? Clearly not. This question was fully considered in *State* v. *Doherty*, 60 Maine, 504.

The court there held that an act of the legislature that should attempt to validate indictments found by a grand jury not legally selected, would violate both the state and the United States constitutions. That case was not decided upon any narrow ground. It was decided upon the broad principle that an indictment is not valid, and cannot be made valid by the legislature, unless it is found by a grand jury legally selected, organized and qualified, "in accordance with some pre-existing law." Such is the very language of the court ; and the authorities there cited fully sustain the position.

And in an earlier case in this state the court decided that the legislature cannot, by act or resolve, dispense with a general law for particular cases. *Lewis* v. *Webb*, 3 Maine, 326.

And Judge Cooley, in his work on constitutional law, lays it down as the result of all the authorities, that when the legislature undertakes to suspend the operation of the general laws of the

state, the supension must be general ; that it cannot be made for individual cases, or for particular localities. Cooley's Con. Lim. 391.

The act in question is objectionable upon both of these grounds. It does not purport to change the general law of the state. It does not declare that in no case shall the seal of the court be essential to the validity of venires for grand jurors. It does not declare that in no case shall an indictment be invalidated by such an omission. Nor is it to have effect in any other county than the county of Penobscot. It goes no further than to declare that the venires for this particular grand jury shall be valid, notwithstanding they were issued without the seal of the court upon them ; and that no act or presentment of this particular grand jury shall be invalidated by reason of such defect ; leaving the law with respect to all other counties, and all other grand juries in the county of Penobscot, and all other indictments, precisely as it was before. In other words, it was a direct attempt to dispense with the general law of the state, for a particular locality and for a particular class of cases, leaving it still in force for all other localities and all other cases. This, as we have already seen, cannot be done. Such an act is, in principle, as objectionable as a bill of attainder or an *ex post facto* law.

The escape of criminals through defects in mere matters of form, is always cause for regret. But it would be cause for much deeper regret if the court should disregard any well settled rule of law in order to prevent such a result. We must not do evil that good may come. We must not ourselves become violators of the law in order to punish others. The remedy is the use of more care.

*Exceptions sustained.*

*Indictment quashed.*

APPLETON, C. J., DICKERSON, VIRGIN and PETERS, JJ., concurred.

BARROWS, J., added the following supplementary concurring opinion : If the question, whether the want of a seal upon the venires by means of which they were summoned vitiated the doings of a grand jury, were *res nova*, I should say that when grand jurors competent to serve had been drawn by the proper town officers in the manner prescribed by law, by virtue of a venire thus defective, and attended court in pursuance of the summons, and the

court recognized the venire as its own writ, and caused the jurors thus attending to be duly impaneled and sworn, their acts in the position into which they had been thus inducted ought to be held good. In other words that the directions in the statute with regard to the issuing of venires were designed to enable the court to secure the attendance of a sufficient number of good and lawful men to serve as grand jurors, and that a question as to the sufficiency of the venire could arise only between the court and the municipal officers or the juror summoned, who would be competent to waive any such defect in the process by which he was brought into court.

I do not see how it is possible that any substantial right of a person charged with crime could be prejudiced by such a defect, or how it concerns him, any more than it would to know whether the grand juror came to court on foot or on horseback. If a person competent to serve as a grand juror, selected by the right men in the manner prescribed by the statute, presents himself in obedience to the call of the court, I do not see that it makes any difference whether that call is loud or low, or in all respects formal. If he did not come, the court would not be able to compel him if there was a defect in the writ by virtue of which he was summoned ; but where the writ issues from the proper authority I should say that those who were directly affected by it alone could be heard to assert defects in it, and might waive them if they saw fit ; and if they did waive them no other parties could complain.

But in the case of the *State* v. *Lightbody*, 38 Maine, 200, the court decided this precise question contrary to the view which I have taken.

Since then, I think it has rested with the legislature to declare it by positive enactment, if they did not deem a seal upon the venires essential to the validity of the doings of the grand jury. A venire means, of course, "a venire in due form." My attention has not been called to any change in the revisions or legislation since the decision in *State* v. *Lightbody*, which indicates a change of legislative intention respecting the statutes which there received a judicial construction. There is no indication of it even in Special Laws of 1876, c. 307.

Hence I concur in the result reached in the foregoing opinion.