(No. 19333.-▮▮▮▮▮▮)

ANNA VEER *et al.* Plaintiffs in Error, *vs.* WILLIAM A. HAGEMANN *et al.* Defendants in Error.

*Opinion filed February 20, 1929.*

L. A. JAYNE, and C. W. MIDDLEKAUFF, for plaintiffs in error.

DAVID D. MADDEN, LORETTA LADEN, and ROBERT L. BRACKEN, guardian *ad litem,* for defendants in error.

Mr. JUSTICE STONE delivered the opinion of the court:

Plaintiffs in error filed a bill in the circuit court of Ogle county to contest the will of William Hagemann on the ground of undue influence and mental incapacity. On the trial a jury sustained the will. A decree was entered upon the verdict, and the cause comes here by writ of error.

Hagemann died on January 23, 1925, of pneumonia, which arose out of an infection caused by a puncture of the palm of his right hand with a rusty nail. All evidence relating to mental incapacity or undue influence is directed to the week immediately preceding his death. Plaintiffs in error concede that up to Friday, January 16, 1925, the deceased was of sound mind.

The deceased came to Ogle county from Germany when a young man. He was then without funds. He was sixty-four years of age at the time of his death. In that interval he acquired more than a thousand acres of land in Ogle and Stephenson counties and was possessed of $19,000 in personal property. He was a man of meagre education and did not speak English freely. In the early part of January, 1925, he ran a rusty nail into the palm of his right hand. On January 13, 1925, he went to the office of a physician in Leaf River to have it treated. Two days later this physician called at the home of deceased, who was at that time showing some temperature and the swelling from his hand had extended part way up his arm. By January 17 an abscess had formed on the back of his right hand, which was opened and drained. On Sunday, the 18th, a consultation of physicians was had at the request of the family. These physicians met at his home about five o'clock P. M. on that day. He then had a temperature between 104 and 105 degrees. Later in that day the physicians gave him a hypodermic injection to combat the infection and placed him under the charge of a nurse. On Monday, January 19, at the request of the deceased, one of his sons called Roy

Mize, a banker at Leaf River, who came to the home of the deceased, and the latter told him he wanted to deed his property to his children, but Mize told him it would be necessary for him to make a will. The deceased thereupon told him what property he had and how he wanted to dispose of it. The will was written by Mize in longhand and it was read over to the deceased. After the correction of certain errors mentioned by deceased it was re-read, and he stated the will was all right and that he wanted to sign it. Samuel Garkey and Owen Wagner, neighbors of the deceased, were called in to witness the will. Hagemann at that time declared it was his last will and testament.

Lillian Brearton, the nurse in charge of the case, testified that on Monday, January 19, the day on which the will was executed, the swelling on the arm of the deceased was somewhat reduced, the inflammation had somewhat subsided and his temperature was lower; that he was of sound mind at that time, and that she did not notice any change in that condition until some time Thursday night. Dr. Borrowman, the family physician, who first attended the deceased, testified that he developed hypostatic pneumonia on Thursday afternoon, January 22. He died the following day. Dr. Holke, who was called in for consultation and who was also called as a witness for plaintiffs in error, stated that on Sunday, January 18, the deceased was rational; that he was not delirious, had no hallucinations of any kind and was normal mentally. This was likewise the testimony of Dr. Borrowman, who also testified that the deceased was of sound mind on Monday, January 19, the day the will was executed. He also testified that the comatose condition which was caused by pneumonia was first noticeable on the evening of the day before his death.

Four witnesses, including the witnesses to the will, who saw the deceased between January 13 and the date of his death, including the day on which the will was made and

the day immediately preceding, testified that he was of sound mind at that time. Four other witnesses testified that they called on him during the afternoon of Sunday, the day before the will was made, and that he was then of sound mind and memory. These witnesses had all known the deceased for a number of years, most of them being his neighbors.

Plaintiffs in error produced three lay witnesses. Two physicians qualified as experts and testified for plaintiffs in error in answer to hypothetical questions. The court withdrew the issue of undue influence from the jury.

Plaintiffs in error contend that the verdict was against the weight of the evidence; that the court erred in withdrawing the issue of undue influence from the jury, in admitting the testimony of witnesses as to the soundness of mind of the deceased on Friday before the will was made and in refusing to admit the testimony of Fred Aukes; that counsel for defendants in error erred in their argument to the jury; also that the court erred in not sustaining the challenge to the array and quashing the panel of jurors.

The evidence so overwhelmingly demonstrates the soundness of mind of the testator that the record does not justify an extended discussion of the proof. The scrivener who wrote the will discussed it with the testator for an hour or more concerning the terms of it, the amount of his property and what each of his twelve children was to receive. The will was also discussed by the deceased in the presence of the witnesses to the will, Wagner and Garkey. The physician in charge testified that he was of sound mind up to Thursday afternoon, when he went into a coma. The nurse in charge from Sunday, the 18th, until the date of his death, also testified that his mental condition was sound, as did the other witnesses referred to. The only witnesses produced by plaintiffs in error who saw the deceased were Dr. Holke, who testified that he was of sound mind on the day before the making of the will; Edna

Steinhagen, who testified that the deceased was of unsound mind on Friday, January 17, (one of the days on which plaintiffs in error admit the deceased was of sound mind,) and on the 18th, 19th and 20th; and Fred Steinhagen, who testified that the deceased was of unsound mind on January 19, basing his reason for such conclusion on the fact that he appeared sleepy, tired and pretty sick. The verdict of the jury was abundantly sustained by the evidence.

Nor did the chancellor err in withdrawing from the jury the issue of undue influence. The only evidence in the record pertaining to that matter is to the effect that William A. Hagemann, a son of the deceased, was sent by his father to ask the scrivener to come to the house to draw the will, and to ask the witnesses Wagner and Garkey to come for the purpose of witnessing it. There is no evidence that he attempted to exert any influence over his father or occupied a fiduciary relationship. As to Ernest Hagemann, the other son charged with undue influence, the evidence shows that he had nothing whatever to do with the execution of the will.

The complaint as to the wrongful admission of testimony is, that witnesses were permitted to testify as to the sanity and soundness of mind of the testator on Friday, the 16th of January, one of the days on which it is conceded he was sane. This was not error. It is competent for witnesses to testify as to the mental condition of the testator at or near the time of the making of the will, and the fact that his sanity is conceded as to a certain date does not bar testimony of witnesses on that matter. *Chandler* v. *Fisher,* 290 Ill. 440; *Walker* v. *Struthers,* 273 id. 387; *Carnahan* v. *Hamilton,* 265 id. 508; *Voodry* v. *University of Illinois,* 251 id. 48.

Complaint is also made of the exclusion of the testimony of Fred Aukes, a witness produced by plaintiffs in error. It was sought to show by him that one of the farms held in the name of the testator had been purchased for one

of his sons-in-law, Clint Bolen. The purpose of offering such testimony, as stated by counsel, was to show that Bolen still owed the testator about $4000 on this farm and was in possession of the same, and since by the will the testator devised this farm to others, it was evidence that he did not know the condition of his property. It was not error to refuse to admit this testimony, as it would have opened the question of an account between the testator and Bolen and had to do with the equities of the latter, if any, in this land. It is conceded that the testator had title to the land at that time. The effect of this testimony would have been to confuse the issues and to present to the jury the matter of the equities of Bolen in certain lands devised by the testator, which matter may be inquired into in another proceeding. Where the confusion of issues will not be compensated by the assistance of useful evidence it is proper to exclude the evidence offered. Whether such offered evidence should be admitted where its admission will tend to confuse the issues is left to the sound discretion of the trial court. *Kankakee Park District* v. *Heidenreich,* 328 Ill. 198; 1 Wigmore on Evidence, (1st ed.) sec. 443.

It is next urged that an improper remark was made by counsel for defendants in error. The remark complained of is, "There has never been a will broken in Ogle county and there won't be to-day." It is urged that the effect of this statement was to call upon the jury to maintain the reputation of juries in Ogle county for sustaining wills. This statement is not necessarily subject to that construction. It was a comment of counsel on a matter outside of the record and had no place in the argument. The court sustained the objection to it and admonished the jury to disregard it, and it could not have resulted in harm to the plaintiffs in error.

It is finally contended that the court should have sustained the challenge to the array. It appears that when the

trial of this cause was begun a jury of twelve men of the regular panel was considering another case. For some reason one of the remaining twelve jurors was not called to the box or had been excused, and counsel agreed to proceed to the selection of a jury with eleven jurors in the box. The jurors had all been sworn to answer questions, and the examination of the first panel of four was conducted by counsel for defendants in error. Counsel for plaintiffs in error took part in this examination, interposing objections to certain questions. While this examination was in progress one of counsel for plaintiffs in error went to the county clerk's office to examine the record of the selection of the jury, and after counsel for defendants in error had completed the examination of the first four jurors and tendered them, plaintiffs in error offered a challenge to the array, which was overruled for the reason that it was not made in apt time. It is the right of a party to a lawsuit to enter a challenge to the array where a panel of jurors is not drawn in accordance with the statute, but if the objecting party has entered upon the business of selecting a jury from such panel he waives his right to challenge the array and any objection which he might have taken to the regular organization of the panel. (*Mueller* v. *Rebhan,* 94 Ill. 142.) It is evident from the record that counsel for plaintiffs in error had opportunity, before the commencement of the trial, to examine the records in the county clerk's office. It was not error to overrule the challenge to the array.

There being no reversible error in the record the decree of the circuit court will be affirmed.

*Decree affirmed.*