**STATE of Maine**

**v.**

**Murray P. EMERY.**

Supreme Judicial Court of Maine.

July 25, 1969.

Daniel G. Lilley, Peter T. Dawson, Asst. Attys. Gen., Augusta, for appellant.

Donald C. Gellers, Eastport, for appellee.

Before WILLIAMSON, C. J., and WEBBER, MARDEN, DUFRESNE and WEATHERBEE, JJ.

WILLIAMSON, Chief Justice.

On report under M.R.Crim.P., Rule 37A.

This is a motion "for a new trial on the grounds of the improper constituting of the Grand Jury and Traverse Jury which respectively indicted and tried (the defendant), and on account of the prejudice thereby suffered * * *" The case arises from the inadvertent omission of voting lists from two Indian Voting Districts at the October 1967 term of the Superior Court in Washington County.

The defendant was indicted and convicted by a jury of assault with intent to kill and was sentenced to imprisonment at the State Prison. On November 1, 1967 he filed an appeal, now pending.

On the following day the Court entered, on its own motion, an order reading in part:

"Whereas, by Article 1, Section 7, of the Maine Constitution the Legislature is authorized to provide a suitable and impartial mode for the selection of juries; and

"Whereas, the 1967 Legislature by the enactment of Chapter 336 of the public Laws of 1967 repealed Title 14, Sections 1254 and 1255, M.R.S.A., which Act became effective October 7, 1967, thus making radical changes in the method of selection of both Grand and Traverse Juries by the Jury Commissioners; and

"Whereas, said Jury Commissioners did obtain complete and certified lists of voters from all the municipalities in said county to form a basis for the selection of said Jurors; and

"Whereas, under the pre-existing law one of the requirements for service as a juror was eligibility to vote for Representatives from the various municipalities, but said Chapter 336, P.L. 1967, effective only three days prior to October 10, 1967, does not contain this limitation of eligibility; and

"Whereas, said Chapter 336, P.L. 1967, by its terms required the lists to be the municipal voting lists, the term "municipality" being defined as any "city, town or plantation"; and

"Whereas, the Jury Commissioners were not aware that qualified voters residing in the Peter Dana Point voting district and the Pleasant Point voting district (Title 21, Sections 1621 and 1622) had a special provision for elections to be conducted in each of said districts, but said Jury Commissioners were of the belief that these qualified voters actually were on the voting lists in the towns adjoining said districts; and

"Whereas, the said Jury Commissioners had no knowledge that the terms "municipal officers" and "municipalities," as used in said Chapter 336, P.L. 1967, should be defined in a broader sense than the statutory definition of these terms and would, by judicial interpretation, include the Registration Commissioner of each of said districts and that each of said districts should be considered as a "municipality" for the purposes set forth in said Chapter 336, P.L. 1967; and

"Whereas, said Jury Commissioners had no actual knowledge that the qualified voters of each of said districts should be included with the lists of voters obtained from the other municipalities in said county; and

"Whereas, the selection of Grand Jurors for said term was made from a Jury pool which was drawn from a master list which did not include qualified voters from either of said voting districts; and

"Whereas, as neither the attorney for the state nor for any defendant who had been bound over made any challenge to the array of the Grand Jury on the ground that it was not selected, drawn, or summoned in accordance with the law under Rule 6, (b) (1) of the Criminal Rules, al-

though the Court in open session made inquiry prior to the swearing of the Grand Jury if there were any such challenges to the array, and there were none, all of which appears in the notes of the Official Court Reporter; and

"Whereas, neither the Court nor either of the Jury Commissioners, were actually aware of the said failure to include said lists of voters until several days after the Grand Jury had been sworn, had deliberated, reported, and been excused until further call, or until the February, 1968, Term of said Court; and

"Whereas, this Court, after due deliberation, is of the opinion that, although the acts of the Grand Jury to this date have not been challenged and may be presumed valid, a subsequently-made challenge to the array of the Grand Jury might then have merit, because said lists of voters from said voting districts were not included in the master list from which, by use of a multiple, the Jury pool is drawn by said Jury Commissioners; therefore,

"IT IS ORDERED:

"1. That the existing Grand Jury as now constituted is disbanded and discharged from further service;

"2. That the master pool as drawn by the Jury Commissioners is vacated; * * *."

The Court directed the Jury Commissioners to correct the lists, select a new jury pool, and draw jurors for a new Grand Jury.

It is also pertinent (1) that the omission of the two voting lists was not known to the defendant or his counsel until after trial and sentence and then through the Order of the Court stated above, and (2) that the defendant's wife, who was a witness in his behalf, is an Indian.

There is not the slightest suggestion that the Jury Commissioners in selecting the master pool of jurors intentionally sought to deprive Indians from their undoubted right to serve as jurors, if otherwise qualified.

We deny the motion for new trial on grounds later discussed. The case is thus left on the Superior Court docket for processing of the appeal.

■ First: The defendant's objections raised by the motion came too late.

Objections to the array of grand jurors are made under M.R.Crim.P.Rule 6, (b) (1) and (2). A challenge may be made before the jurors are sworn (1), or "if not previously determined upon challenge, a motion to dismiss the indictment may be based on objections to the array * * *." (2).

The motion to dismiss, replacing the former motion to quash or plea in abatement, may be raised only before trial. M.R.Crim.P.Rule 12(a), (b), (1), (2), (3).

"The motion shall include all such defenses and objections available to the defendant. Failure to present any such defense or objection as herein provided constitutes a waiver thereof, but the court for cause shown may grant relief from the waiver." (2) Scales v. United States, 367 U.S. 203, 81 S.Ct. 1469, 1501, 6 L.Ed.2d 782 (1961); 3 Maine Pract.Rules—Criminal (Glassman) Sec. 6.3; Orfield: Criminal Procedure under the Federal Rules Sec. 12.16.

With reference to the complaint about the Traverse jury we said in State v. Christian (Me.) 235 A.2d 294, 295, in language here fully applicable:

"The respondent's motion was not made until after the jury had retired and were engaged in deliberation upon their verdict. Although for the reasons stated we do not reach this issue, it may be noted in passing that a challenge to the array after voir dire and the drawing of a jury has begun is said to come too late. Counsel are deemed to have had opportunity before the trial to examine the records to ascertain whether or not a panel

of jurors has been selected in accordance with statutory requirements. Failure to act seasonably constitutes a waiver. Veer v. Hagemann (1929) 334 Ill. 23, 165 N.E. 175, 178; State v. O'Connor (1952) 117 Vt. 176, 86 A.2d 924."

The defendant in our view waived his objections to both juries by failing to act seasonably. The fact that the two Indian Voting District lists were not included in the lists from which the master pool was selected, could have been readily ascertained in time to challenge the jury. Nothing was hidden from view of defendant. He has shown no reasonable excuse for his want of knowledge. Cf. State v. Rouner, 333 Mo. 1236, 64 S.W.2d 916, 92 A.L.R. 1099 and annot. The Legislature, in enacting the present method of random selection of jurors based on voting lists, did nothing to soften the requirements of seasonable challenge to jurors both grand and traverse.

■ The argument of both the defendant and the State is directed to the applicability of 14 M.R.S.A. Sec. 1352 which on examination taken alone touches only procedure in civil cases.

"No irregularity in the venires or drawing, summoning, returning or impaneling jurors is sufficient to set aside a verdict, unless the party objecting was injured by the irregularity or unless the objection was made before the return of the verdict." 14 M.R.S.A. Sec. 1352.

The procedure in criminal cases was tied to the civil procedure until 1965 by 15 M.R.S.A. Sec. 1259 reading, "Issues of fact joined on indictments shall be tried by a jury drawn and returned in the same manner, * * * as in civil cases, * * *." The quoted language was repealed in P.L. 1965, c. 356, Sec. 48. Thus Sec. 1352 relating to civil procedure applied to criminal procedure until the 1965 law effective before our case arose. Both Sec. 1352 and Sec. 1259 (until repealed) remained without consequential change from R.S.1841 C. 115 Sec. 70; C. 172, Sec. 30.

The rule that objections to the composition of either jury must be seasonably made or thereby are waived is thus found in the statutes noted. The cases under the statutes are of interest in the application of the principle. In no one of the cases cited below by the defendant on the composition of a Grand Jury was the charge of error as stated made, as here, after the verdict. The cases thus do not reach the situation before us. State v. Symonds, 36 Me. 128, 132 (objection in "nature of a plea in abatement, at the arraignment"); State v. Lightbody, 38 Me. 200, 203 (motion to quash before pleading); State v. Doherty, 60 Me. 504 (motion to quash before pleading); State v. Clough, 49 Me. 573 (motion to quash before pleading; State v. Flemming, 66 Me. 142, 149 (motion to quash seasonably filed).

In State v. Neagle, 65 Me. 468, the defendant sought without success to set aside the verdict of guilty on the ground that certain names had been withdrawn from the Bath jury box without his knowledge.

Wallace v. Inhabitants of Columbia, 48 Me. 436, in which objections after verdict were held too late, does not as urged by the defendant hold that unless the facts were known before trial, objection may be made after verdict. The Court said at p. 439:

"The juror objected to was not properly returned, nor sworn, in the case at bar. But the facts were known to the defendants before the trial; nor does it appear that they were injured by the irregularity. It was too late for them to make the objection afterwards. R.S. c. 82, Sec. 73, 74." (1857 R.S.)

The Court had no occasion to rule on a situation in which the facts were reasonably available before trial to the complainant. In any event Rule 12 makes clear that the motion must be made before trial.

■ Second: We find nothing in the record to establish any injury to the defendant from prejudice or otherwise. The

error at most was in the omission of voters of the two Indian Voting Districts from the master list of voters from which the jury pool was selected. It is not contended that the jurors in fact on either the Grand or Traverse Jury were not qualified persons. The language of the North Carolina Court is apt.

"It has been held in a number of cases that mere irregularity on the part of the jury commissioners in preparing the jury list, unless obviously, designedly, or intentionally discriminatory, would not vitiate the list or afford a basis for a challenge to the array." State v. Koritz, 227 N.C. 552, 43 S.E.2d 77, 80.

The defendant is not entitled to relief under Rules 6 and 12. He complains too late of an error too small.

■ Third: The defendant argues that his constitutional rights have been violated by the exclusion of Indian voters from the juries in question. We do not agree.

For our purposes we will assume without deciding that the defendant, as the husband of an Indian, has standing to raise the issue of exclusion of the Indian voters.

It is unnecessary to examine the constitutional issue at length. The defendant seeks to bring the case within the principle of violation of constitutional rights from an intentional and systematic exclusion of a racial group, i. e., Indians, or at least Indians on the reservations in Washington County. See Coleman v. Alabama, 389 U.S. 22, 88 S.Ct. 2, 19 L.Ed.2d 22 (1967).

In our case the exclusion was neither intentional nor systematic. The error occurred in the course of establishing a new plan for jury selection designed to broaden the participation of our citizens in the performance of the important duty of jury service.

With one stroke the 1967 Legislature ended the jury selection system of the past. Whether Indians did or did not serve on Washington County juries in the past is immaterial in the operation of the statute.

In upholding a state's jury selection system which included women on juries only when they volunteered to serve, the Supreme Court stated the principle as follows:

"This case in no way resembles those involving race or color in which the circumstances shown were found by this Court to compel a conclusion of purposeful discriminatory exclusions from jury service. (Citing cases) There is present here neither the unfortunate atmosphere of ethnic or racial prejudices which underlay the situations depicted in those cases, nor the long course of discriminatory administrative practice which the statistical showing in each of them evinced." Hoyt v. Florida, 368 U.S. 57, 68, 82 S.Ct. 159, 166, 7 L.Ed.2d 118.

We commend the action of the Justice in the Superior Court in directing the selection of a new pool of jurors and the drawing of a new Grand Jury under the unusual circumstances facing him in the installation of the 1967 jury system.

The possibility of claims of error was thereby minimized. There being in our opinion neither relief under Rule 6 nor violation of the constitutional rights for the defendant,

The entry will be

Motion for new trial denied.

TAPLEY, J., sat at argument but retired before the opinion was adopted.