Wendell O. CHRISTIAN

v.

STATE of Maine and Allan L. Robbins, Warden.

Supreme Judicial Court of Maine.

Aug. 18, 1970.

Daniel G. Lilley, Portland, for plaintiff.

Garth K. Chandler, Asst. Atty. Gen., Augusta, for defendant.

Before WILLIAMSON, C. J., and WEBBER, MARDEN, DUFRESNE, and WEATHERBEE, JJ.

DUFRESNE, Justice.

This is an appeal from the denial of post-conviction relief under 14 M.R.S.A. §§ 5502–5508. The appellant was convicted of the crime of rape by a Cumberland County jury in December, 1966 and is serving his sentence to a term in Maine State Prison of not less than 4 years and not more than 10 years. The issue raised in the habeas corpus proceeding and carried to this Court on appeal is whether his imprisonment is illegal for the reason, so he claims,. that the trial jury which convicted him was un-

lawfully constituted, both in violation of his rights under the Constitutions of the United States and of this State and in disregard of the statutory provisions of 14 M.R.S.A. §§ 1254, 1255.

The single Justice below did find that the jury composition was not representative of the County of Cumberland, the area served by the jury, either as to occupations or population distribution, that such irregularity was not the result of design but the fault of the system and petitioner's failure to raise timely his challenge to the array resulted in a waiver of any irregularity in the jury-selection method used. We deny the appeal.

In a previous direct appeal from conviction, Christian sought a new trial for the identical reason that the jury was illegally made up. We did not reach the issue on that occasion as there was no proof on the record before us that the jury panel was in fact and in law illegally constituted and we concluded that the record disclosed no resulting prejudice to the defendant. State v. Christian, 1967, Me., 235 A.2d 294.

In habeas corpus proceedings to the Federal Courts, on the same record as presented to us on appeal, the United States Court of Appeals for the First Circuit denied a certificate of probable cause to appeal the District Court's refusal to grant the writ or the certificate. The Circuit Court emphasized that all that petitioner showed or offered to show was that the venire, and ultimate panel, were not in fact representative of a cross-section of the community, and that such showing was not of itself probative of any underlying constitutional error, since there is no constitutional requirement that jury panels should be in fact representative of a cross-section of the community. Christian v. State of Maine, 1968, 1st Cir., 404 F.2d 205. The Court further added that the issue is not whether the particular panel proved to be unrepresentative in fact of a cross-section of the community, but rather whether the jury lists or rolls from which the panel

was drawn were made up from an artificially limited base or in a discriminatory manner, such as when the absence of a class from the jury pool results from design or discrimination, citing Fay v. New York, 1947, 332 U.S. 261, 284, 67 S.Ct. 1613, 1626, 91 L.Ed. 2043; Swain v. Alabama, 1965, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759; Thiel v. Southern Pacific Co., 1946, 328 U.S. 217, 220, 66 S.Ct. 984, 90 L.Ed. 1181. With these conclusions of the Circuit Court of Appeals, we agree.

In an effort to support by proof his claim of illegal composition of the jury that convicted him, Christian caused one of the participating jury commissioners to testify at length respecting the procedure followed in providing jurors to the Superior Court in Cumberland County for the year 1966. The commissioner stated that some 500 summonses for jury service were issued in that particular year to accommodate the several terms of the Superior Court in that county. The bulk of these names of prospective jurors was furnished to the commissioners on their request by the municipal officers of the several municipalities in the county as then directed by 14 M.R.S.A. § 1254. Occupations and addresses were listed. From these lists of names, and from a small number of other names obtained from the Clerk of Courts and another court official, together with those of persons known to them personally or by reputation, the jury commissioners compiled under loose-leaf "black book" format a master list or pool of persons eligible for jury service. This book was kept in the exclusive possession of one commissioner. The witness candidly admitted that these municipal lists were not further screened by the commissioners to determine qualification for jury service of the persons submitted. They accepted these lists in good faith presuming that the municipal officers in fulfillment of their statutory duties were sending them "a list of such persons only as are of good moral character, of approved integrity, of sound judgment and well-informed, and qualified

as the Constitution directs to vote for Representatives in such town." The same reliance was placed in the names furnished by the Clerk of Courts and the other court official, although these officers were mere volunteers in respect thereto. In order to maintain a satisfactory number of persons on the jury rolls, it was necessary for the commissioners to make periodic requests to municipal officials, and at times repeatedly, for more names of persons for jury service, and where names were not forthcoming in sufficient numbers from lack of cooperation, directories and other sources or information were used to supplement directly the "black book."

No attempt was made in the compilation of names for the master list to balance the roster according to geographical or occupational considerations. It was only when in receipt of a notice from the Clerk of the Superior Court that a stated number of jurors were required for a certain date on which they were to report for duty, that the commissioners did, in accordance with the provisions of 14 M.R.S.A. § 1255, try to select a jury panel so constituted as to give "a fair and just distribution according to population." The commissioner further testified that they usually attempted to select from the "black book" master list a panel of jurors that would be representative not only in relation to population distribution, but also with regards to occupational status. The final list of jurors prepared and kept by the commissioners as the official jury pool, the "black book" so-called, from which the several jury panels for the respective court sessions would be drawn, was not duplicated, and a copy thereof was not deposited with the clerk of courts for the County of Cumberland to be at all times during business hours open to public inspection as required under the terms of 14 M.R.S.A. § 1254.

That the Christian jury was not a representative jury, whether viewed from geographical or economic considerations, cannot be disputed and the single Justice so found. However, there was not an iota of evidence tending to show that any class of persons eligible for jury service was purposefully excluded, nor was there proof of any systematic discriminatory practices disenfranchising any social group from jury service. No evidentiary analysis of the master list or "black book" was given to us to support any claim of exclusion of any economic group or class of persons. No statistical information was introduced respecting previous juries selected under the then existing procedures to point up a consistent pattern of recurring mal-apportioned juries.

With access to the list of the jury venire and knowledge of their addresses and occupations, but without information concerning the particular method used by the jury commissioners in preparing the underlying jury pool from which the Christian panel had been selected, the appellant proceeded to trial without objections, counsel having expressly manifested their satisfaction with the jury panel ultimately drawn after voir dire and the exercise of some challenges. During jury deliberations, Christian's counsel filed a motion to the Court attacking the whole array of traverse jurors on the ground that they were not a fair and just distribution according to the population of the County of Cumberland. This motion was denied for the stated reason that it was filed too late. Appellant has shown no meritorious claim to the writ of habeas corpus.

■ Under Article I, Section 6, of our Constitution of Maine, in all criminal prosecutions, the accused has a right to have an impartial trial by a jury of the vicinity. He shall not be deprived of his life, property or privileges, but by judgment of his peers or the law of the land. The Sixth Amendment to the Constitution of the United States, through the Fourteenth Amendment, guarantees similar protection. An impartial trial necessitates an impartial jury, Bennett v. State, 1965, 161 Me. 489, 214 A.2d 667, at 671, and thus the constitutional guarantee of an impartial trial en-

compasses the right to be tried by an impartial jury. It is indispensable, and an essential, basic and fundamental concept under our judicial system, that the individuals composing the jury in any given case should be impartial, indifferent, and under no bias or prejudice. State v. Knight, 1857, 43 Me. 11, at page 124.

■ As stated in Strauder v. State of West Virginia, 1879, 100 U.S. 303, 308–309, 25 L.Ed 664: "The very idea of a jury is a body of men composed of the peers or equals of the person whose rights it is selected or summoned to determine; that is, of his neighbors, fellows, associates, persons having the same legal status in society as that which he holds." But the constitutional provision that a person shall not be deprived of his life, property or privileges, but by the judgment of his peers does not mean that an accused has a constitutional right to be tried by members of the class of persons to which he is attached by reason of racial and ethnic extraction or economic status. The scope of one's right to an impartial jury as assured by the Fourteenth Amendment through an impartial process of selection does not entitle one accused of crime to a jury tailored to the circumstances of the particular case, whether relating to the sex *or other condition of the defendant, or to the nature of the charges against him.* "It requires only that the jury be indiscriminately drawn from among those eligible in the community for jury service, untrammelled by any arbitrary and systematic exclusions." Hoyt v. State of Florida, 1961, 368 U.S. 57, 82 S.Ct. 159, 7 L.Ed.2d 118.

■ The constitutional prohibitions of the Fourteenth Amendment reach not only arbitrary class exclusions from jury service based on race or color, but also all other exclusions which single out any class of persons for different treatment without any reasonable basis for the classification. Hoyt v. State of Florida, supra; Hernandez v. Texas, 347 U.S. 475, 478, 74 S.Ct. 667, 670, 98 L.Ed. 866.

■ Due to these constitutional restrictions barring arbitrary exclusions of classes of people from jury service, the concept of trial by jury under the terms of state and federal constitutions has now come to presuppose a jury drawn from a pool of persons truly representative of the community. To this end, the methods used in the selection process must not only tend to assure that competent jurors be chosen for prospective jury service, but also that the group placed on the rolls be fully representative as a cross-section of the community. Glasser v. United States, 1942, 315 U.S. 60, 85–86, 62 S.Ct. 457, 472, 86 L.Ed. 680; Smith v. State of Texas, 311 U.S. 128, 130, 61 S.Ct. 164, 165, 85 L.Ed. 84; Rabinowitz v. United States, 1966, 5th Cir., 366 F.2d 34.

The scope of the constitutional privilege, however, does not encompass the right to proportional class representation. In the administration of the jury laws proportional representation is not a constitutional required factor. Hoyt v. State of Florida, supra. And this rule applies to proportional representation of economic classes. Fay v. People of State of New York, 1947, 332 U.S. 261, 67 S.Ct. 1613, 91 L.Ed. 2043.

■ To secure an impartial jury drawn from a cross-section of the community does not mean that the jury pool from which the jury is to be drawn must contain representatives of all the economic, social, religious, racial, political and geographical groups of the community. But it does mean that prospective jurors for the jury rolls shall be selected without systematic and intentional exclusion of any of these groups. Class distinctions and discriminations in jury selection are abhorrent to the democratic ideals of trial by jury and are constitutionally impermissible, whether they arise out of racial prejudices or are based upon religious, political and economic bigotry. Neither the jury roll, the venire, nor the ultimate panel, need be a perfect mirror of the community or accurately reflect the proportionate strength of every identifiable group. Uncooperative efforts on the part of some

municipal officials to furnish jury commissioners with lists of a sufficient number of prospective jurors as required of them under 14 M.R.S.A. § 1254 and the method used by the commissioners in supplementing the jury rolls may have on occasion by reason of the imperfection of the system itself given the jury pool an imbalanced unrepresentative character. See Swain v. State of Alabama, supra.

 There was no proof whatsoever of an intentional or systematic exclusion of wage earners and laborers, or of any class for that matter, either from the jury pool or the venire from which the Christian panel was drawn. It was incumbent upon the appellant to make such a showing. Hernandez v. Texas, supra; Fay v. New York, supra. The irregularities surrounding the preparation of the jury lists in the instant case and the resulting malapportionment of the venire present no problem of constitutional dimension.

Is the appellant entitled to relief from conviction because the commissioners did not, as then required by 14 M.R.S.A. § 1255, select the venire from which the Christian jurors were drawn "by such method as will give a fair and just distribution according to population?"

The appellant's challenge to the array based on non-compliance with statutory requirements in the selection of the venire came too late when made after the acceptance of the jury and completion of the trial during jury deliberations. Such an objection must be made before trial. State v. Emery, 1969, Me., 255 A.2d 898. Leach v. State, 1961, Fla., 132 So.2d 329, cert. den. 368 U.S. 1005, 82 S.Ct. 636, 7 L. Ed.2d 543; Shotwell Manufacturing Co. v. United States, 1963, 371 U.S. 341, 83 S.Ct. 448, 9 L.Ed.2d 357; 47 Am.Jur.2d Jury, § 227.

It is immaterial that the irregularity came to the attention of the accused only after the commencement of trial or even following its completion. The appellant had knowledge from the very list of the veniremen that the statutory geographical distribution of the prospective jurors was suspect. Given such information, it was his duty to investigate into the methods used in the preparation of the jury pool. A person is charged with the knowledge of facts which a proper investigation would have disclosed. Brown v. Reed, 1889, 81 Me. 158, 16 A. 504; State v. Jones, 1912, S.C., 75 S.E. 449; People v. McCrea, 1942, 303 Mich. 213, 6 N.W.2d 489; State v. Ferraro, 1958, 146 Conn. 59, 147 A.2d 478, cert. den. 369 U.S. 880, 82 S.Ct. 1155, 8 L.Ed.2d 283.

The rule might be otherwise if the irregularity, unknown to the defendant at trial, was subsequently revealed as affecting the ability of the jury to render a fair and impartial trial. There is not the slightest hint in the instant case that the Christian jury did not fairly hear the appellant's case with an unprejudiced mind. Where no injury to the appellant from prejudice or otherwise has been established, his present claim of aggrievement on appeal must fail. State v. Emery, supra; State v. Neagle, 1876, 65 Me. 468.

The entry will be

Appeal denied.

POMEROY, J., did not sit.