## HOYT v. FLORIDA.

No. 31.  Argued October 19, 1961.—Decided November 20, 1961.

*Herbert B. Ehrmann* argued the cause for appellant. With him on the brief were *Raya S. Dreben* and *C. J. Hardee, Jr.*

*George R. Georgieff,* Assistant Attorney General of Florida, argued the cause for appellee.  With him on the brief was *Richard W. Ervin,* Attorney General.

*Dorothy Kenyon* and *Rowland Watts* filed a brief for the Florida Civil Liberties Union et al., as *amici curiae,* urging reversal.

58

MR. JUSTICE HARLAN delivered the opinion of the Court.

Appellant, a woman, has been convicted in Hillsborough County, Florida, of second degree murder of her husband. On this appeal under 28 U. S. C. § 1257 (2) from the Florida Supreme Court's affirmance of the judgment of conviction, 119 So. 2d 691, we noted probable jurisdiction, 364 U. S. 930, to consider appellant's claim that her trial before an all-male jury violated rights assured by the Fourteenth Amendment. The claim is that such jury was the product of a state jury statute which works an unconstitutional exclusion of women from jury service.

The jury law primarily in question is Fla. Stat., 1959, § 40.01 (1). This Act, which requires that grand and petit jurors be taken from "male and female" citizens of the State possessed of certain qualifications,[1] contains the following proviso:

"provided, however, that the name of no female person shall be taken for jury service unless said person has registered with the clerk of the circuit court her desire to be placed on the jury list."

Showing that since the enactment of the statute only a minimal number of women have so registered, appellant challenges the constitutionality of the statute both on its face and as applied in this case. For reasons now to follow we decide that both contentions must be rejected.

At the core of appellant's argument is the claim that the nature of the crime of which she was convicted peculiarly demanded the inclusion of persons of her own sex on the jury. She was charged with killing her husband by assaulting him with a baseball bat. An infor-

---

[1] Jurors must be: "persons over the age of twenty-one years, who are citizens of this state, and who have resided in the state for one year and in their respective counties for six months, and who are duly qualified electors of their respective counties . . . ."

mation was filed against her under Fla. Stat., 1959, § 782.04, which punishes as murder in the second degree "any act imminently dangerous to another, and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular individual . . . ." As described by the Florida Supreme Court, the affair occurred in the context of a marital upheaval involving, among other things, the suspected infidelity of appellant's husband, and culminating in the husband's final rejection of his wife's efforts at reconciliation. It is claimed, in substance, that women jurors would have been more understanding or compassionate than men in assessing the quality of appellant's act and her defense of "temporary insanity." No claim is made that the jury as constituted was otherwise afflicted by any elements of supposed unfairness. Cf. *Irvin* v. *Dowd,* 366 U. S. 717.

Of course, these premises misconceive the scope of the right to an impartially selected jury assured by the Fourteenth Amendment. That right does not entitle one accused of crime to a jury tailored to the circumstances of the particular case, whether relating to the sex or other condition of the defendant, or to the nature of the charges to be tried. It requires only that the jury be indiscriminately drawn from among those eligible in the community for jury service, untrammelled by any arbitrary and systematic exclusions. See *Fay* v. *New York,* 332 U. S. 261, 284–285, and the cases cited therein. The result of this appeal must therefore depend on whether such an exclusion of women from jury service has been shown.

I.

We address ourselves first to appellant's challenge to the statute on its face.

Several observations should initially be made. We of course recognize that the Fourteenth Amendment reaches

not only arbitrary class exclusions from jury service based on race or color, but also all other exclusions which "single out" any class of persons "for different treatment not based on some reasonable classification." *Hernandez* v. *Texas,* 347 U. S. 475, 478. We need not, however, accept appellant's invitation to canvass in this case the continuing validity of this Court's dictum in *Strauder* v. *West Virginia,* 100 U. S. 303, 310, to the effect that a State may constitutionally "confine" jury duty "to males." This constitutional proposition has gone unquestioned for more than eighty years in the decisions of the Court, see *Fay* v. *New York, supra,* at 289–290, and had been reflected, until 1957, in congressional policy respecting jury service in the federal courts themselves.[2] Even were it to be assumed that this question is still open to debate, the present case tenders narrower issues.

Manifestly, Florida's § 40.01 (1) does not purport to exclude women from state jury service. Rather, the statute "gives to women the privilege to serve but does not impose service as a duty." *Fay* v. *New York, supra,* at 277. It accords women an absolute exemption from jury service unless they expressly waive that privilege.

---

[2] From the First Judiciary Act of 1789, § 29, 1 Stat. 73, 88, to the Civil Rights Act of 1957, 71 Stat. 634, 638, 28 U. S. C. § 1861— a period of 168 years—the inclusion or exclusion of women on federal juries depended upon whether they were eligible for jury service under the law of the State where the federal tribunal sat. See *Ballard* v. *United States,* 329 U. S. 187, 191–192; *Glasser* v. *United States,* 315 U. S. 60, 64–65. By the Civil Rights Act of 1957 Congress made eligible for jury service "Any citizen of the United States," possessed of specified qualifications, 28 U. S. C. § 1861, thereby for the first time making qualifications for federal jury service wholly independent of those prescribed by state law. The effect of that statute was to make women eligible for federal jury service even though ineligible under state law. See *United States* v. *Wilson,* 158 F. Supp. 442, aff'd, 255 F. 2d 686. There is no indication that such congressional action was impelled by constitutional considerations. Cf. *Fay* v. *New York, supra,* at 290.

This is not to say, however, that what in form may be only an exemption of a particular class of persons can in no circumstances be regarded as an exclusion of that class. Where, as here, an exemption of a class in the community is asserted to be in substance an exclusionary device, the relevant inquiry is whether the exemption itself is based on some reasonable classification and whether the manner in which it is exercisable rests on some rational foundation.

In the selection of jurors Florida has differentiated between men and women in two respects. It has given women an absolute exemption from jury duty based solely on their sex, no similar exemption obtaining as to men.[3] And it has provided for its effectuation in a manner less onerous than that governing exemptions exercisable by men: women are not to be put on the jury list unless they have voluntarily registered for such service; men, on the other hand, even if entitled to an exemption, are to be included on the list unless they have filed a written claim of exemption as provided by law.[4] Fla. Stat., 1959, § 40.10.

In neither respect can we conclude that Florida's statute is not "based on some reasonable classification," and that it is thus infected with unconstitutionality. Despite the enlightened emancipation of women from the restrictions

---

[3] Men may be exempt because of age, bodily infirmity, or because they are engaged in certain occupations. Fla. Stat., 1959, § 40.08.

[4] Under Fla. Stat., 1959, § 40.12, every person claiming an exemption, other than as provided with respect to women in § 40.01 (1), must file, annually, before December 31 with the clerk of the circuit court an affidavit of exemption and the grounds on which such claim is based. The affidavit is forwarded to the jury commissioners, who, if the affidavit is found sufficient, then omit the affiant from the jury list for the succeeding calendar year. In case exemption is denied, the claim to it may be renewed in any court in which the affiant is summoned as a juror during that year. The exemption for such year is lost, however, by failure to file the required affidavit before the end of the preceding year.

62

and protections of bygone years, and their entry into many parts of community life formerly considered to be reserved to men, woman is still regarded as the center of home and family life. We cannot say that it is constitutionally impermissible for a State, acting in pursuit of the general welfare, to conclude that a woman should be relieved from the civic duty of jury service unless she herself determines that such service is consistent with her own special responsibilities.

Florida is not alone in so concluding. Women are now eligible for jury service in all but three States of the Union.[5] Of the forty-seven States where women are eligible, seventeen besides Florida, as well as the District of Columbia, have accorded women an absolute exemption based solely on their sex, exercisable in one form or another.[6] In two of these States, as in Florida, the

[5] *Alabama,* Ala. Code, 1940 (Recompiled Vol. 1958), Tit. 30, § 21; *Mississippi,* Miss. Code Ann., 1942 (Recompiled Vol. 1956), § 1762; *South Carolina,* S. C. Code, 1952, § 38–52.

[6] *Alaska,* Alaska Comp. Laws Ann., 1949, § 55–7–24 Eighth; *Arkansas,* Ark. Stat., 1947, § 39–112; *District of Columbia,* D. C. Code, 1961, Tit. 11, § 1418; *Georgia,* Ga. Code Ann., 1933 (Supp. 1958), § 59–124; *Idaho,* Idaho Code, 1948, § 2–411 and (Supp. 1961) § 2–304; *Kansas,* Kan. Gen. Stat., 1949, § 43–116, § 43–117; *Louisiana,* La. Rev. Stat., 1950, § 15:172.1; *Minnesota,* Minn. Stat. Ann., 1947, § 593.04; (Supp. 1960) § 628.49; *Missouri,* Mo. Const., Art. I, § 22 (b); *Nevada,* Nev. Rev. Stat., 1957, § 6.020 (3); *New Hampshire,* N. H. Rev. Stat. Ann., 1955, § 500:1; *New York,* McKinney's N. Y. Laws, Judiciary Law (Supp. 1961), § 507 (7); *North Dakota,* N. D. Cent. Code, 1960, § 27–09–04; *Rhode Island,* R. I. Gen. Laws, 1956, § 9–9–11; *Tennessee,* Tenn. Code Ann., 1955, § 22–101, § 22–108; *Virginia,* Va. Code, 1950 (Replacement Vol. 1957, Supp. 1960), § 8–178 (30); *Washington,* Wash. Rev. Code, 1951, § 2.36.080; *Wisconsin,* Wis. Stat. Ann., 1957, § 6.015 (2).

In twenty-one States women, generally speaking, are eligible for jury service on the same basis and considerations as men: *Arizona,* Ariz. Rev. Stat. Ann., 1956, § 21–202, § 21–336; *California,* Calif. Code Civ. Proc., 1954, § 198, § 200, § 201; *Colorado,* Colo. Rev. Stat., 1953, § 78–1–1 (2), § 78–1–3, § 78–1–7; *Delaware,* Del. Code Ann.,

exemption is automatic, unless a woman volunteers for such service.[7] It is true, of course, that Florida could have limited the exemption, as some other States have done, only to women who have family responsibilities.[8] But we cannot regard it as irrational for a state legislature to consider preferable a broad exemption, whether born of the State's historic public policy or of a determination that it would not be administratively feasible to decide in each individual instance whether the family responsibilities of a prospective female juror were serious enough to warrant an exemption.

1953, Tit. 10, § 4504; *Hawaii,* Hawaii Const., Art. I, § 12; Hawaii Rev. Laws, 1955, § 221–3, § 221–4; *Illinois,* Smith-Hurd's Ill. Ann. Stat., 1935 (Supp. 1960), c. 78, § 4; *Indiana,* Burns' Ind. Ann. Stat., 1933 (Replacement Vol. 1946; Supp. 1961), § 4–3317; *Iowa,* Iowa Code Ann., 1950, § 607.2, § 607.3; *Kentucky,* Ky. Rev. Stat., 1960, § 29.035; *Maine,* Me. Rev. Stat., 1954, c. 116, § 7; *Maryland,* Michie's Md. Ann. Code, 1957, Art. 51, § 3 and (Supp. 1961) Art. 51, § 8 (women still have an absolute exemption in four counties) ; *Michigan,* Mich. Stat. Ann., 1938 (Supp. 1959), § 27.263, § 27.264; *Montana,* Mont. Rev. Code Ann., 1947, § 93–1304, § 93–1305; *New Jersey,* N. J. Stat. Ann., 1952 (Supp. 1960), § 2A:69–1, § 2A:69–2; *New Mexico,* N. M. Stat. Ann., 1953, § 19–1–2, § 19–1–31; *Ohio,* Page's Ohio Rev. Code Ann., 1954, § 2313.12, § 2313.16; *Oregon,* Ore. Rev. Stat., 1959, § 10.040, § 10.050; *Pennsylvania,* Purdon's Pa. Stat. Ann., 1930, Tit. 17, § 1279, § 1280; *South Dakota,* S. D. Code, 1939 (Supp. 1960), § 32.1001, § 32.1002; *Vermont,* Vt. Stat. Ann., 1958, Tit. 12, § 1410; *West Virginia,* W. Va. Code, 1955 (Supp. 1960), § 5262.

[7] *Louisiana,* La. Rev. Stat., 1950, § 15:172.1; *New Hampshire,* N. H. Rev. Stat. Ann., 1955, § 500:1.

[8] In eight States women may be excused if they have family responsibilities which would make jury service an undue hardship: *Connecticut,* Conn. Gen. Stat. Rev., 1958, c. 884, § 51–218; *Massachusetts,* Mass. Gen. Laws Ann., 1959, c. 234, § 1, § 1A; *Nebraska,* Neb. Rev. Stat., 1943 (Reissue Vol. 1956), § 25–1601.01, § 25–1601.02; *North Carolina,* N. C. Gen. Stat., 1943 (Recompiled Vol. 1953; Supp. 1959), § 9–19; *Oklahoma,* Okla. Stat. Ann., 1951 (Supp. 1960), Tit. 38, § 28; *Texas,* Vernon's Tex. Rev. Civ. Stat., 1926 (Supp. 1960), Art. 2135; *Utah,* Utah Code Ann., 1953, § 78–46–10 (14) ; *Wyoming,* Wyo. Comp. Stat., 1945 (Supp. 1957), § 12–104.

Likewise we cannot say that Florida could not reasonably conclude that full effectuation of this exemption made it desirable to relieve women of the necessity of affirmatively claiming it, while at the same time requiring of men an assertion of the exemptions available to them. Moreover, from the standpoint of its own administrative concerns the State might well consider that it was "impractical to compel large numbers of women, who have an absolute exemption, to come to the clerk's office for examination since they so generally assert their exemption." *Fay* v. *New York, supra,* at 277; compare 28 U. S. C. § 1862; H. R. Rep. No. 308, 80th Cong., 1st Sess. A156 (1947).[9]

Appellant argues that whatever may have been the design of this Florida enactment, the statute in practical operation results in an exclusion of women from jury service, because women, like men, can be expected to be available for jury service only under compulsion. In this connection she points out that by 1957, when this trial took place, only some 220 women out of approximately 46,000 registered female voters in Hillsborough County—constituting about 40 per cent of the total voting population of that county [10]—had volunteered for jury duty since the limitation of jury service to males, see *Hall* v. *Florida,* 136 Fla. 644, 662–665, 187 So. 392, 400–401, was removed by § 40.01 (1) in 1949. Fla. Laws 1949, c. 25,126.

---

[9] 28 U. S. C. § 1862 exempts from federal jury duty those in active service in the armed forces, members of federal or local police and fire departments, and certain actively engaged federal, state and local public officials. The House Report on the bill states:

"This section [§ 1862] makes provision for specific exemption of classes of citizens usually excused from jury service in the interest of the public health, safety, or welfare. The inclusion in the jury list of persons so exempted usually serves only to waste the time of the court."

[10] 114,247, of which some 68,000 were men.

This argument, however, is surely beside the point. Given the reasonableness of the classification involved in § 40.01 (1), the relative paucity of women jurors does not carry the constitutional consequence appellant would have it bear. "Circumstances or chance may well dictate that no persons in a certain class will serve on a particular jury or during some particular period." *Hernandez* v. *Texas, supra,* at 482.

We cannot hold this statute as written offensive to the Fourteenth Amendment.

## II.

Appellant's attack on the statute as applied in this case fares no better.

In the year here relevant Fla. Stat., 1955, § 40.10 in conjunction with § 40.02 required the jury commissioners, with the aid of the local circuit court judges and clerk, to compile annually a jury list of 10,000 inhabitants qualified to be jurors. In 1957 the existing Hillsborough County list had become exhausted to the extent of some 3,000 jurors. The new list was constructed by taking over from the old list the remaining some 7,000 jurors, including 10 women, and adding some 3,000 new male jurors to build up the list to the requisite 10,000. At the time some 220 women had registered for jury duty in this county, including those taken over from the earlier list.

The representative of the circuit court clerk's office, a woman, who actually made up the list testified as follows as to her reason for not adding others of the 220 "registered" women to the 1957 list: "Well, the reason I placed ten is I went back two or three, four years, and noticed how many women they had put on before and I put on approximately the same number." She further testified: "Mr. Lockhart [one of the jury commissioners] told me at one time to go back approximately two or three years to get the names because they were recent women that had signed up, because in this book [the female juror

register], there are no dates at the beginning of it, so we can't—I don't know exactly how far back they do go and so I just went back two or three years to get my names." When read in light of Mr. Lockhart's testimony, printed in the margin,[11] it is apparent that the idea was to avoid

[11] Mr. Lockhart testified:

"Q. All right. Now, getting back to March 8, 1957, how many eligible female women were registered in that book?

"A. Well, I don't know how many were qualified, but they have the names on there of about 220.

"Q. Approximately 220?

"A. As I say, from 1952, on, since I went back on the second time, there has only been about 35 that has registered with the Clerk of the Circuit Court.

"Q. All right, sir. Now, were there any eligible female names left off of this jury list which you've prepared?

"A. There probably were.

"Q. On March 8, 1957?

"A. From the last four years, we have been averaging about ten to twelve on each list.

"Q. All right. Why is that, Mr. Lockhart?

"A. Because since 1952, there has only been about 30, 35 that's qualified to, I mean, went down and registered for jury duty. You don't have much to choose from.

"Q. Well, now, how do you select women's names from that registration book?

"A. Well, we just have to take the names on there, that's all.

"Q. Well, you've used some system with reference to that book, do you not?

"A. Well, we try to check them through. They did before this last year. I tried to check them through the City Directory. You'll find that a good many of the women folks now are over 65. In fact, one of them is approximately eighty.

"Q. What I am trying to get at, Mr. Lockhart, is this. If there were only ten women's names, as you testified, went into the present jury list and there were at the time about 220 eligible women who had registered for jury service, why the difference between ten and 220 which were apparently eligible?

"A. Well, they have been put over a spread of years.

"Q. Well, how do you do that?

"A. Well, every year, there is a new jury list and we put on ten or twelve every jury list. In fact, along seven or eight years ago, it was

listing women who though registered might be disqualified because of advanced age or for other reasons.

Appellant's showing falls far short of giving this procedure a sinister complexion. It is true of course that the proportion of women on the jury list (10) to the total of those registered for such duty (some 220) was less than 5%, and not 27% as the trial court mistakenly said and

---

pretty hard to see whether—the status changed so rapidly, it was pretty hard to know whether they would be qualified or not.

"Q. Would I be correct, then, in saying that you omitted approximately 210 eligible women's names when you compiled this list?

"A. I wouldn't say they were eligible because we didn't check them. We don't check every name on the registration books.

"Q. I'm talking about this registration book in the Clerk of the Circuit Court's office, Mr. Lockhart, where the women are required to come there and register for jury duty?

"A. You can say it's 220 names on that book. There is.

"Q. All right. If there are 220 eligible women on that book—

"A. I don't know if they are eligible or not.

"Q. What I want to know, then, is why you picked just ten out of that 220 to go into this jury list?

"A. Well, we picked—we have average, for the last four years, ten to twelve on each list.

.        .        .        .

"Q. Mr. Lockhart, in making up this list, jury list, from which the present panel was drawn, did you attempt to comply with Florida Statute, Section 40.01, sub-section (1), in making up that list?

"A. Would you mind reading it to me?

"Q. Well, that's the Statute, Mr. Lockhart, governing the qualifications for jurors and I will read it, if you like. [§ 40.01 read.] Now, what I am asking, Mr. Lockhart, is, did you purport to comply with that statute when you prepared this jury list?

"A. Yes, sir.

"Q. All right. Did you put in this list on March 8, 1957, any women or female's names who were registered voters but who had not registered with the Clerk of the Circuit Court?

"A. If it was there, we didn't intend to. We checked the registration. The law requires that to be on registration.

"Q. In other words, you would say that you did not?

"A. Yes. That's right. I doubt what, with that small number of names. They were checked with the registration office."

the state appellate court may have thought. But when those listed are compared with the 30 or 35 women who had registered since 1952 (note 11, p. 66) the proportion rises to around 33%, hardly suggestive of an arbitrary, systematic exclusionary purpose. Equally unimpressive is appellant's suggested "male" proportion which we are asked to contrast with the female percentage. The male proportion is derived by comparing the number of males contained on the jury list with the total number of male electors in the county. But surely the resulting proportion is meaningless when the record does not even reveal how many of such electors were qualified for jury service, how many had been granted exemptions (notes 3 and 4, p. 61), and how many on the list had been excused when first called. (*Id.*)

This case in no way resembles those involving race or color in which the circumstances shown were found by this Court to compel a conclusion of purposeful discriminatory exclusions from jury service. *E. g., Hernandez* v. *Texas, supra; Norris* v. *Alabama*, 294 U. S. 587; *Smith* v. *Texas*, 311 U. S. 128; *Hill* v. *Texas*, 316 U. S. 400; *Eubanks* v. *Louisiana*, 356 U. S. 584. There is present here neither the unfortunate atmosphere of ethnic or racial prejudices which underlay the situations depicted in those cases, nor the long course of discriminatory administrative practice which the statistical showing in each of them evinced.

In the circumstances here depicted, it indeed "taxes our credulity," *Hernandez* v. *Texas, supra,* at 482, to attribute to these administrative officials a deliberate design to exclude the very class whose eligibility for jury service the state legislature, after many years of contrary policy, had declared only a few years before. (See p. 64, *supra.*) It is sufficiently evident from the record that the presence on the jury list of no more than ten or twelve women in the earlier years, and the failure to add in 1957 more women to those already on the list, are attributable

not to any discriminatory motive, but to a purpose to put on the list only those women who might be expected to be qualified for service if actually called. Nor is there the slightest suggestion that the list was the product of any plan to place on it only women of a particular economic or other community or organizational group. Cf. *Thiel* v. *Southern Pacific Co.*, 328 U. S. 217; *Glasser* v. *United States*, 315 U. S. 60, 83–87. And see also *Fay* v. *New York, supra,* at 287.

Finally, the disproportion of women to men on the list independently carries no constitutional significance. In the administration of the jury laws proportional class representation is not a constitutionally required factor. See *Akins* v. *Texas*, 325 U. S. 398, 403; *Cassell* v. *Texas*, 339 U. S. 282, 286–287; *Fay* v. *New York, supra,* at 290–291.

Finding no substantial evidence whatever in this record that Florida has arbitrarily undertaken to exclude women from jury service, a showing which it was incumbent on appellant to make, *Hernandez* v. *Texas, supra,* at 479–480; *Fay* v. *New York, supra,* at 285, we must sustain the judgment of the Supreme Court of Florida. Cf. *Akins* v. *Texas, supra.*

*Affirmed.*

THE CHIEF JUSTICE, MR. JUSTICE BLACK and MR. JUSTICE DOUGLAS, concurring.

We cannot say from this record that Florida is not making a good faith effort to have women perform jury duty without discrimination on the ground of sex. Hence we concur in the result, for the reasons set forth in Part II of the Court's opinion.