182 So.2d 442 (1966)
Joseph Nathaniel SIMMONS, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. G-324.
District Court of Appeal of Florida. First District.
February 8, 1966.
*443 Robert A. Green, Jr., Public Defender, for appellant.
Earl Faircloth, Atty. Gen., and William D. Roth, Asst. Atty. Gen., for appellee.
STURGIS, Judge.
The appellant, defendant below, was tried by jury, convicted of rape, and sentenced to life imprisonment, hence this appeal presenting the following points of law for determination:
I. Whether it was error to deny defendant's motion to quash the jury panel on the ground that the venire from which it was empaneled was not selected according to law.
II. Whether it was error to admit in evidence defendant's alleged confession of the crime with which he was charged.
III. Whether it was error to admit in evidence certain personal property of the defendant alleged to be the fruit of an unlawful search and seizure.
Discussing said Point I, defendant timely moved to discharge the jury panel on the substantial ground that in preparing the list from which the panel called to try this case was drawn the Alachua County Jury Commission systematically excluded eligible persons on the basis of race, class and color. At the hearing upon said motion defendant presented as witnesses the Supervisor of Registration of Alachua County and the two members of said jury commission.
The Supervisor of Registration testified, in substance, that in her office it was the custom upon registering voters to note the records so as to indicate whether the registrant was a white or negro person, and that in the course of registration a card was made for each registrant and furnished to said jury commission for its use in making a master list of persons eligible for jury service. While the testimony of this witness is not conclusive beyond every imaginable doubt, it must be fairly interpreted as to the effect that two types of cards were used, a white card indicating the elector was a white person and a yellow card indicating the elector was a negro or colored person. Upon being asked by the court: "In other words, Mrs. Bethea, you do use cards of different color, a white card and a yellow card?", she replied: "Yes." The court then inquired: "But you don't know whether this distinction is between white and colored or male and female?" to which she replied:
"I believe, Judge, that I would be correct in saying that it is used between the races, but I'm not positive enough that I would want to state that under oath, but that information certainly could be given. And the reason I can't answer that is because in the process of registration I give it to the girls who type this and they know what form to use. I believe that that's right."
The chairman of the jury commission, with eight years immediate prior service thereon, when asked what distinction was made by the colors of the cards, said:
"Well, up until a few days ago I was inclined to believe that there was no distinction and the reason I believed that was because  well, let me retract that just a moment. We have white cards and we have yellow cards. Very possibly in the past it was my impression that the yellow cards were for colored and the white cards were for white, however because of the many numbers that we know of where there were errors in the color, I really thought that they had gone away from such a system in the past and to the Jury Commission there was almost no reliable distinction in that."
This witness also testified positively that the jury commission made no distinction between white and negro in the process of preparing a master jury list. The following series of questions and answers upon the examination of this witness is critical *444 to our consideration of whether a "class" of persons was unlawfully excluded from the master list of jurors:
"Q. On what qualifications do you determine whether or not a person is placed on the jury list?
"A. The vast majority of it is instinct. The law spells out fairly clearly what we must look for in terms of a good juror. However, when we eliminate all of those who are disqualified for any reason or another and then we ultimately get down to who shall serve and who shall not serve, we just try to use our own good judgment on that particular score.
"Q. Are there any particular classes of persons who are not placed on the jury list?
"A. Classes, I think perhaps about the only one that we would not put on a jury list might be common laborers, someone whose employment or whose occupation is shown as common laborer. We will on occasion put truck drivers on, but there's no  I think that we have others  if we're looking for two hundred names, for example, and we have those who are not truck drivers we would use them rather than truck drivers.
"Q. So as a class generally common laborers would not be placed on the jury list?
"A. I think that's a safe assumption.
"Q. Now, other than as a class are negroes excluded from the jury list?
"A. Not at all.
"Q. Unless they would fall in the class of common laborer?
"A. Yes, I think that is probably so. There might even be exceptions to that."
The other jury commissioner testified that no distinction was made between whites and negroes, that he did not know how many negroes were on the subject panel, and that it had been selected at random from the list of registered voters as given to him by the Supervisor of Registration. However, on being further examined counsel for defendant inquired: "That would be with the exception that you do make selection on the basis of occupation?", to which he replied, "That's a stronger statement than I would like to give credence to, but I would subscribe to it. Yes."
It is crystal clear that in making up the jury list there was an intentional and systematic exclusion of common laborers as a class. The prohibition against such action is clearly explored in Porter v. State, 160 So.2d 104 (Fla. 1964), in which Mr. Justice O'Connell, speaking for the Florida Supreme Court, recognized the rule that discrimination in the selection of juries because of race, class or color is violative of the federal constitution. Cassell v. State of Texas, 1950, 339 U.S. 282, 70 S.Ct. 629, 94 L.Ed. 839. In the Porter case the state offered no evidence and was content to object to the defendant's testimony regarding the qualification of the jury panel on the ground that it was secondary evidence and that the best evidence would be the testimony of the county officials responsible for jury selection. In Porter the defendant's evidence tended to show a substantial disparity between the proportion of negroes on the jury list as compared to the number of that race in the total population of the county where tried. Disposing of that contention, the Florida Supreme Court said:
"He has offered no direct showing that the selecting officials intentionally discriminated against Negroes in the preparation of the jury list. Nor did he attempt to show that the system, *445 method or standards employed by these officials were in themselves discriminatory. He relies solely on the results of the selection procedures as reflected in his statistics.
"Our task here is to determine whether the evidence in this case shows sufficient disproportion or disparity to raise a presumption that discrimination was practiced.
"As this Court said in the Tarrance case, supra [43 Fla. 446, 30 So. 685], at page 688:
`The presumption is that those charged with administering the laws have properly discharged their duty and against any misconduct on their part, until the contrary is made to appear.'"
It was thereupon held that appellant Porter had not met the burden of overcoming said presumption.
We have alluded to the Porter case at length because the appellant in the case on review did meet the burden of overcoming the quoted presumption from Tarrance v. State, 43 Fla. 446, 30 So. 685 (1901), 188 U.S. 519, 23 S.Ct. 402, 47 L.Ed. 572, and other cases cited by the author. In the case now under consideration the defendant presented the testimony of the county officials responsible for jury selection and demonstrated thereby that the jury here challenged was the product of a discriminative selection in direct violation of the federal constitution.
For an interesting discussion of the subject of discrimination in the selection of juries by exclusion of a class see 50 Iowa L.Rev. 778 (1965). See also, Thiel v. Southern Pacific Co., 328 U.S. 217, 66 S.Ct. 984, 90 L.Ed. 1181, 166 A.L.R. 1412 (1946), dealing with a situation where laborers working for daily wages were deliberately excluded from jury service, in which the court said:
"Recognition must be given to the fact that those eligible for jury service are to be found in every stratum of society. Jury competence is an individual rather than a group or class matter. That fact lies at the very heart of the jury system. To disregard it is to open the door to class distinctions and discriminations which are abhorrent to the democratic ideals of trial by jury."
We have carefully considered the second and third points of law argued by appellant on this appeal and hold that the trial court was not in error in the premises.
For the reasons stated, it was error to deny defendant's motion to quash the jury panel and so the judgment appealed must be and it is
Reversed.
WIGGINTON, Acting C.J., and CARROLL, DONALD K., J., concur.