Marsha B. **HEALY** et al., Plaintiffs,

v.

Hon. Edwin **EDWARDS**, Governor of La., et al., Defendants.

Civ. A. No. 73-688.

United States District Court, E. D. Louisiana.

Aug. 31, 1973.

George Strickler, New Orleans, La., Ruth Bader Ginsburg, New York City, Sylvia Roberts, Baton Rouge, La., for plaintiffs.

Warren E. Mouledoux, Baton Rouge, La., Dale C. Wilks, Robert L. Danner, Jr., New Orleans, La., for defendants.

Before WISDOM, Circuit Judge, and RUBIN and WEST, District Judges.

RUBIN, District Judge:

The Louisiana Constitution[1] and statutes[2] exempt women from service on juries unless they file a written declaration of their desire to serve. This benign dispensation has resulted in jury panels that, in the parishes here involved, have never included more than five percent females, and frequently less. The plaintiffs in this class action seek a declaration that the exemption provisions violate the rights of the class to Equal Protection and Due Process of the Law, and an injunction against continued enforcement of these laws.

### I.

Three separate classes of suitors join in the attack: (a) one comprises all fe-

---

1. La.Const. Art. VII, § 41.

2. Under the authority of the state constitutional provision, separate statutes allow the exemption in civil and in criminal cases: LSA–R.S. 13:3055; La.Code of Criminal Procedure, Art. 402.

males in the named parishes; these women contend that both their right to serve on juries and their opportunity, should occasion arise, to litigate before juries is abridged; (b) another comprises all males in those parishes; these men contend that they are subject to more onerous jury service because similarly situated females are not required to serve; and (c) the third, the intervening class, is composed of female litigants in civil cases in state court; these contend they are deprived of a jury of their peers.

■ Because the jurisdiction of federal courts is limited by the Constitution to "Cases" and "Controversies," Art. III, Sec. 2, U.S. Constitution, they may not issue merely advisory opinions concerning the constitutionality of legislation, federal or state. Indeed the power to declare a statute unconstitutional is deduced from the necessity of determining its validity in order to decide a particular case or controversy.

■ A case, in the constitutional sense, must present a real controversy. A statute may be attacked as unconstitutional only by someone who has sustained or is in immediate danger of sustaining some direct injury from its enforcement. It does not suffice to show that one is injured merely as a member of the body politic. Frothingham v. Mellon, 1923, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078.

This is what is meant by standing to sue, the requirement that, to justify attack on legislation, a litigant be able to show injury by the statute, "for it is this requirement that gives a litigant a direct stake in the controversy and prevents the judicial process from becoming no more than a vehicle for the vindication of value interests of concerned bystanders." United States v. SCRAP, 1973, 412 U.S. 669, at p. 687, 93 S.Ct. 2405, at p. 2416, 37 L.Ed.2d 254.

In *SCRAP* only a few weeks ago, the Supreme Court focused the light of the decisions on standing: the test is whether the litigant can show "injury in fact," that he has been or will in fact be "perceptibly harmed." The litigants in *SCRAP* met that test by alleging a "specific and perceptible harm that distinguished them from other citizens."

■ It is not necessary that the harm be great or substantial; it suffices that it be small, indeed a trifle, so long as it distinguishes a person with a direct stake in the outcome of the litigation from a person with a mere interest in the problem. SCRAP, 412 U.S. at p. 689, 93 S.Ct. at p. 2415, and note 14.

We pretermit the question whether all females as a class suffer a specific and perceptible harm when required to write a letter in order to serve on juries or whether the greater burden of jury service imposed on males by the virtual exemption of females from jury duty is a palpable enough trifle. Together these two classes—all women and all men—comprise the entire adult citizenry, and they allege in effect a harm to the body politic. It may be questioned whether, if the entire citizenry is aggrieved by official action, they may seek judicial relief instead of following the political route accorded by the democratic process.

■ But there is a class of persons joined in prosecuting this suit who have both a direct and a personal interest: the intervenors representing women who have suits pending in state court.

Litigants have standing to allege the unconstitutionality of a statute or practice that potentially denies their right to Due Process of Law by interfering with fair jury selection.[3] The intervenors' standing to sue gives justiciability to the entire case. "[A] court has discretion to treat the pleading of an intervenor as a separate action in order that it

---

3. "[A] plaintiff need not invariably wait until he has been successfully prosecuted, dismissed, denied a license, or otherwise directly subjected to the force of a law or policy before he may challenge it in court." National Student Association v. Hershey, 1969, 134 U.S.App.D.C. 56, 412 F.2d 1103, 1110.

might adjudicate the claims raised by the intervenor." Fuller v. Volk, 3 Cir. 1965, 351 F.2d 323, 328–329. Accord: Atkins v. State Board of Education, 4 Cir. 1969, 418 F.2d 874, 876; Hackner v. Guaranty Trust Co., 2 Cir. 1941, 117 F.2d 95, 98.

The intervenors represent, through Ms. Baggett, females actually engaged in litigation in state courts. To deprive them of a jury comprising a fair cross section of the population, including females, is a claim of "sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Golden v. Zwickler, 1969, 394 U.S. 103, 89 S.Ct. 956, 959, 22 L.Ed.2d 113. "Defendants in criminal proceedings do not have the only cognizable legal interest in nondiscriminatory jury selection." Carter v. Jury Commission, 1970, 396 U.S. 320, 90 S.Ct. 518, 523, 24 L.Ed.2d 549.

It is unnecessary to probe whether these litigants would have standing to challenge the provisions of the Louisiana Code of Criminal Procedure for jury selection in criminal cases, were that issue presented alone. Their right to challenge the Louisiana constitutional provision having been established, the issue of the entire scope of jury selection in all kinds of cases appears to be inescapably involved.

## II.

Only twelve years ago, in Hoyt v. Florida, 1961, 368 U.S. 57, 82 S.Ct. 159, 7 L.Ed.2d 118, the Supreme Court upheld the constitutionality of a Florida statute almost identical to the challenged provisions of the Louisiana Constitution. That decision was followed in Leighton v. Goodman, S.D.N.Y.1970, 311 F.Supp. 1181, and United States v. Caci, 2 Cir. 1968, 401 F.2d 664. *Hoyt* rested on the finding that Florida's statute was based on a reasonable classification and the venerable dictum in Strauder v. West Virginia, 1879, 100 U.S. 303, 310, 25 L. Ed. 664, unchallenged for eighty years, that a State may constitutionally confine jury duty "to males."

But the ground on which *Strauder* stood was eroded by Reed v. Reed, 1971, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225, and crevassed by Frontiero v. Richardson, 1973, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583. In *Reed* the court held that an Idaho statute violated the Equal Protection Clause in providing that, when two individuals are otherwise equally entitled to appointment as administrator of an estate, the male applicant must be preferred to the female. By according different treatment to applicants on the basis of their sex, the statute "establishes a classification subject to scrutiny under the Equal Protection Clause." *Reed, supra*, 92 S.Ct. at 253.

"The Equal Protection Clause . . . [denies] to States the power to legislate that different treatment be accorded to persons placed by a statute into different classes on the *basis of criteria wholly unrelated to the objective of that statute.*" (Emphasis supplied.) Id. at 253–254. By ignoring the individual qualifications of particular applicants, the challenged statute provided "dissimilar treatment for men and women who are thus similarly situated." Id. at 254.

While only four justices were willing in *Frontiero* to conclude that classifications based upon sex "are inherently suspect," eight justices agreed that it was unconstitutional for Congress, solely for administrative convenience, to deny a female member of the uniformed services the right to claim her spouse as a dependent for the purposes of obtaining increased quarters allowances and medical and dental benefits without proving his actual dependency, while according this right to males with respect to female dependency. Three concurring justices found that *Reed* "abundantly supports our decision today." 411 U.S. at 692, 93 S.Ct. at 1773.

The minimum requirement of Equal Protection, then is that dissimilar treatment may no longer constitutionally be provided for men and women who are

similarly situated *with respect to the objectives of the legislation.* The objective of the state legislation here attacked is the method of selecting juries. The state does not contend that there is any difference between males and females with respect to their qualifications or competency as jurors. Nor could it do so, for women's full competency is demonstrated by their complete acceptability if they volunteer. Hence the state constitutional provision patently fails to meet the requirements of Equal Protection for women as potential jurors. Female litigants having standing to sue can properly raise this issue which applies to women as a class.

Female litigants are also denied Equal Protection by being compelled to have their cases decided by juries composed entirely or predominantly of males. If this were proper sauce for geese, there might be gander gravy too: states might with equal logic grant jury exemptions only to all male wage earners who do not ask to serve, with the result that litigants, male and female, would be compelled in practice to submit to verdicts by predominantly female juries. Males might then properly question whether they were being afforded Equal Protection of the laws.[4]

The Nineteenth Amendment brought women the right to vote, and freed them from strictures that had 43 years earlier been lifted from those males who had formerly been denied the franchise because of race. In the half century since then, women have moved in increasing numbers from hearthside into the world of work and business and politics. Forty percent of the American work force is female.[5] Over 57% of all American women between the ages of 20 and 24, and 45% of those between 25 and 34, are in the wage earning work force.[6]

Louisiana's continued subscription to the notion that women must be shielded from jury duty, unless they choose to volunteer, results in juries that are predominantly male. Whether favorable or unfavorable to females, the sexual prejudice implicit in the thesis that women are entitled to an exemption not accorded men imparts to the jury a potential prejudice, be it ever so subtle or intangible, that is real and meaningful. Compare Justice Murphy's dissenting opinion in Fay v. New York, 1947, 332 U.S. 261, 300, 67 S.Ct. 1613, 1633, 91 L.Ed. 2043.

## III.

Litigants, male or female, have a constitutional right to trial by an impar-

4. Ballard v. United States, 1946, 329 U.S. 187, 67 S.Ct. 261, 91 L.Ed. 181, a federal criminal case tried in California, where no women were included on the panel of grand and petit jurors, is not directly applicable. But the court found the "purposeful and systematic exclusion" of women invalid, and observed:

> "It is said, however, that an all male panel drawn from the various groups within a community will be as truly representative as if women were included. The thought is that the factors which tend to influence the action of women are the same as those which influence the action of men—personality, background, economic status—and not sex. Yet it is not enough to say that women when sitting as jurors neither act nor tend to act as a class. Men likewise do not act as a class. But if the shoe were on the other foot, who would claim that a jury was truly representative of the community if all men were intentionally and systemati-

cally excluded from the panel? The truth is that the two sexes are not fungible; a community made up exclusively of one is different from a community composed of both; the subtle interplay of influence one on the other is among the imponderables.

> To insulate the courtroom from either may not in a given case make an iota of difference. Yet a flavor, a distinct quality is lost if either sex is excluded. The exclusion of one may indeed make the jury less representative of the community than would be true if an economic or racial group were excluded." 329 U.S. at 193, 67 S.Ct. at 264.

5. See Lexcen, The Equal Rights Amendment, 31 Federal Bar Journal 247, 250–51; U.S. Dept. of Labor, Women's Bureau, Underutilization of Women Workers, 1971 (revised), p. 1.

6. U.S. Dept. of Commerce, Bureau of the Census, Statistical Abstract of the United States, 1972. Table No. 341, at p. 217.

tial jury drawn from a cross section of the community. The "American tradition of trial by jury, considered in connection with either criminal or civil proceedings, necessarily contemplates an impartial jury drawn from a cross-section of the community." Thiel v. Southern Pacific Co., 1946, 328 U.S. 217, 220, 66 S.Ct. 984, 985, 90 L.Ed. 1181. Since this is inherent in Due Process of Law, the denial may be challenged not only by a litigant who is a member of a class excluded from representation,[7] but even by one whose right to an impartially selected jury is biased by disproportionate partiality to a class that includes him. Peters v. Kiff, 1972, 407 U.S. 493, 92 S.Ct. 2163, 33 L.Ed.2d 83.

*Peters* held that a white defendant might challenge discrimination against black jurors. The opinion illuminates that the arbitrary exclusion of any well-defined class of citizens offends a number of related constitutional values:

—the members of the class excluded are denied Equal Protection;

—potential jurors are denied the "privilege of participating equally . . . in the administration of justice;" and

—"it stigmatizes the whole class, [of those excluded] even those who do not wish to participate, by declaring them unfit for jury service and thereby putting 'a brand upon them, affixed by law, an assertion of their inferiority;'"

—"exclusion of a discernible class from jury service injures not only those defendants who belong to the excluded class, but other defendants as well, in that it destroys the possibility that the jury will reflect a representative cross-section of the community." Id. at 2167.

The court concluded:

But the exclusion from jury service of a substantial and identifiable class of citizens has a potential impact that is too subtle and too pervasive to admit of confinement to particular issues or particular cases.

\*　\*　\*　\*　\*　\*

Moreover, we are unwilling to make the assumption that the exclusion of Negroes has a relevance only for issues involving race. When any large and identifiable segment of the community is excluded from jury service, the effect is to remove from the jury room qualities of human nature and varieties of human experience, the range of which is unknown and perhaps unknowable. It is not necessary to assume that the excluded group will consistently vote as a class in order to conclude, as we do, that their exclusion deprives the jury of a perspective on human events that may have unsuspected importance in any case that may be presented. Id. at 2169.

Females, as individuals, bring to juries "qualities of human nature and varieties of human experience," entirely different from those of males, and a diversity of temperament, among themselves, completely heterogeneous. Their absence from jury panels is significant not because all women react alike, but because they contribute a distinctive medley of views influenced by differences in biology, cultural impact and life experience, indispensable if the jury is to comprise a cross-section of the community.

"It is part of the established tradition in the use of juries as instruments of public justice that the jury be a body truly representative of the community," the Supreme Court declared in Smith v. Texas, 1941, 311 U.S. 128, 130, 61 S.Ct.

7. Whitus v. Georgia, 1967, 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599; Avery v. Georgia, 1953, 345 U.S. 559, 73 S.Ct. 891, 97 L.Ed. 1244; Norris v. Alabama, 1935, 294 U.S. 587, 55 S.Ct. 579, 79 L.Ed. 1074; Carter v. Texas, 1900, 177 U.S. 442, 20 S.Ct. 687, 44 L.Ed. 839; Strauder v. West Virginia, 1879, 100 U.S. 303, 25 L.Ed. 664 (black defendants challenging discrimination against black jurors).

164, 165, 85 L.Ed. 84, referring to the exclusion of jurors based on race. In like tenor, referring to the exclusion of wage earners, in Thiel v. Southern Pacific Company, 1946, 328 U.S. 217, 223, 66 S.Ct. 984, 987, 90 L.Ed. 1181, the Court commented that the excluded class "constitute[s] a very substantial portion of the community, a portion that cannot be intentionally and systematically excluded in whole or in part without doing violence to the democratic nature of the jury system."

A jury panel that is almost entirely male, whether because females are excluded or because they serve only if they volunteer and almost none step forward, cannot be "truly representative of the community," and women's absence does "violence to the democratic nature of the jury system." The jury must not merely mirror the American male, just as it must not reflect the views of only one race or one stratum of society.

Due Process insists upon the integrity of the jury system. There may be no constitutional requirement that a state proceed by grand jury indictment, Hurtado v. California, 1884, 110 U.S. 516, 4 S.Ct. 111, 28 L.Ed. 232. But when prosecution is initiated by indictment, the state may not impose a discriminatory pattern in selecting the jury. Hill v. Texas, 1942, 316 U.S. 400, 62 S.Ct. 1159, 86 L.Ed. 1559.

Similarly, it is unnecessary to search the limits of the Constitution for a right to jury trial in civil cases. "Once the State chooses to provide grand and petit juries, whether or not constitutionally required to do so, it must hew to federal constitutional criteria in ensuring that the selection of membership is free from racial bias," Carter v. Jury Commission, 1970, 396 U.S. 320, 330, 90 S.Ct. 518, 523–524, 24 L.Ed.2d 549, and, we add, every other type of unconstitutional discrimination.[8]

8. The Supreme Court has considered the requirements of the Constitution with respect to the manner of selecting juries in a number of cases. It would be mere pedantry to review them all. But the landmarks stand high and clear.

In Glasser v. United States, 1942, 315 U.S. 60, 85–86, 62 S.Ct. 457, 471–472, 86 L.Ed. 680, Justice Murphy wrote, with respect to the selection of federal juries:

"Lest the right of trial by jury be nullified by the improper constitution of juries, the notion of what a proper jury is has become inextricably intertwined with the idea of jury trial. When the original Constitution provided only that 'The Trial of all Crimes, except in Cases of Impeachment, shall be by Jury;' the people and their representatives, leaving nothing to chance, were quick to implement that guarantee by the adoption of the Sixth Amendment which provides that the jury must be impartial.

\*     \*     \*     \*     \*

But even as jury trial, which was a privilege at common law, has become a right with us, so also, whatever limitations were inherent in the historical common law concept of the jury as a body of one's peers do not prevail in this country. Our notions of what a proper jury is have developed in harmony with our basic concepts of a democratic society and a representative government. For 'It is part of the established tradition in the use of juries as instruments of public justice that the jury be a body truly representative of the community.' " Smith v. Texas, 311 U.S. 128, 130, 61 S.Ct. 164, 165, 85 L.Ed. 84.

In that case the federal jury commissioner had included only those women whose names were on a list supplied by the Illinois League of Women Voters, and prepared exclusively from its membership. The court found this to be unconstitutional. The officials charged with choosing federal jurors,

"must not allow the desire for competent jurors to lead them into selections which do not comport with the concept of the jury as a cross-section of the community. Tendencies, no matter how slight, toward the selection of jurors by any method other than a process which will insure a trial by a representative group are undermining processes weakening the institution of jury trial, and should be sturdily resisted. That the motives influencing such tendencies may be of the best must not blind us to the dangers of allowing any encroachment whatsoever on this essential right. Steps innocently taken may one by one lead to the irretrievable impairment of substantial liberties." Ibid.

See Ballard v. United States, 1946, 329 U.S. 187, 67 S.Ct. 261, 91 L.Ed. 181 (women systematically excluded from grand jury); Thiel v. Southern Pacific Co., 1946, 328 U.

## IV.

 Nor must this court await the day when the Supreme Court itself has occasion to reconsider and overrule *Hoyt*.

"This Court, of course, must follow the Supreme Court, but there are occasional situations in which subsequent Supreme Court opinions have so eroded an older case, without explicitly overruling it, as to warrant a subordinate court in pursuing what it conceves to be a clearly defined new lead from the Supreme Court to a conclusion inconsistent with an older Supreme Court case." Rowe v. Peyton, 4 Cir. 1967, 383 F.2d 709, 714, affirmed 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 420.

This also was the view of the Second Circuit, in Perkins v. Endicott Johnson Corp., 2 Cir. 1942, 128 F.2d 208, where Judge Frank pointed out that, for lower courts to continue to hold stubbornly to barren precedent would stultify them and unnecessarily burden the Supreme Court. See also In re Korman, 7 Cir. 1971, 449 F.2d 32, reversed by the Supreme Court because the Seventh Circuit incorrectly concluded that earlier doctrine had been discarded, 406 U.S. 952, 92 S.Ct. 2055, 32 L.Ed.2d 340; Browder v. Gayle, M.D.Ala.1956, 142 F.Supp. 707, affirmed 352 U.S. 903, 77 S.Ct. 145, 1 L.Ed.2d 114, and cases cited therein; contra Ward v. Luttrell, E.D.La.1968, 292 F.Supp. 162; Fishkin v. United States Civil Service Commission, N.D. Cal.1969, 309 F.Supp. 40, appeal dismissed, 1970, 396 U.S. 278, 90 S.Ct. 557, 24 L.Ed.2d 463; see Comment (1941) 50 Yale Law Journal 1448, 1450.

 When today's vibrant principle is obviously in conflict with yesterday's sterile precedent, trial courts need not follow the outgrown dogma. Hence we consider that *Hoyt* is no longer binding.

## V.

Because the Louisiana Constitution denies all litigants Due Process of Law and deprives female litigants of their right to Equal Protection by according an exemption from jury service to women on a basis different from that available to men under substantially similar circumstances, and on the basis of a sexual criterion that is wholly unrelated to the objectives of jury service, we declare it and the statutes enacted pursuant to it unconstitutional.

Defendants are hereby enjoined from enforcing the constitutional and statutory provisions declared to be unconstitutional.

---

S. 217, 66 S.Ct. 984, 90 L.Ed. 1181 (all persons who worked for daily wage intentionally excluded from jury lists) ; Labat v. Bennett, 5 Cir. 1966, 365 F.2d 698 (wage earners systematically excluded from jury) ; State v. Madison, 1965, 240 Md. 265, 213 A.2d 880 (non-theists excluded from jury) ; Simmons v. State, Fla.App.1966, 182 So.2d 442 (common laborers systematically excluded).

Compare Fay v. People of State of New York, 1947, 332 U.S. 261, 67 S.Ct. 1613, 91 L.Ed. 2043, where the court rejected a challenge to state jury selection methods that resulted in blue ribbon juries as not violative of equal protection or due process, distinguishing the cases involving exclusion based on race as based on violation of federal legislation, 8 U.S.C.A. § 44, designed to enforce the Fourteenth Amendment.