**NATIONAL ORGANIZATION FOR WOMEN—NEW YORK CHAPTER et al., Plaintiffs,**

v.

**Norman GOODMAN, as Clerk of New York County, Defendant.**

No. 73 Civ. 4831.

United States District Court,
S. D. New York.

April 17, 1974.

Philip G. Schrag, New York City, for plaintiffs.

Louis J. Lefkowitz, Atty. Gen., of New York, for defendant; A. Seth Greenwald, Asst. Atty. Gen., of counsel.

**248**

GURFEIN, District Judge:

█ This is an action under 42 U.S.C. § 1983 and 28 U.S.C. § 2201 for a declaratory judgment that New York Judiciary Law § 599(7); McKinney's Consol. Laws, c. 30 which provides that a woman, although qualified, is entitled to exemption from service as a juror upon claiming exemption is unconstitutional. The constitutional claim is that the statute violates the Equal Protection Clause of the Fourteenth Amendment. Jurisdiction is based on 28 U.S.C. § 1343(3).[1]

It is alleged that the individual plaintiffs represent, respectively, three classes. Plaintiff Ann Pilkington is a plaintiff in a jury case currently pending in the Civil Court, New York County, in which she is suing for damages for personal injuries resulting from a kitchen accident.

Plaintiff Anita Murray is a female who seeks to represent all females who are allowed to, but do not have to, serve on juries.

Plaintiff Caplovitz is a male whose wife is a lawyer and who, therefore, has substantial responsibility for the care of their small children. He seeks to represent a class of males called to jury duty in New York County who would be called less frequently if women had an equal obligation to serve on juries.

The plaintiff organization, which sues individually, is devoted to ending sex discrimination. Though they are eligible to serve as jurors in New York if they wish to, its members object to being "stereotyped" as "housewives" and "rearers of children."

The defendant, Goodman, is the New York County Clerk who is charged with selecting, drawing, summoning and empanelling jurors for all courts in New York County.

It is alleged that 46% of the available New York County jury pool is male, but that 81% of empaneled jurors are male.

This is an old story in the setting of new times. The New York system of jury selection has been upheld against this very claim by the Supreme Court. Fay v. New York, 332 U.S. 261, 277–278, 67 S.Ct. 1613, 91 L.Ed. 2043 (1947). Justice Jackson, a careful writer, noted in 1947, scarcely more than a quarter of a century ago, that "[t]he contention that women should be on the jury is not based on the Constitution, it is based on a changing view of the rights and responsibilities of women in our public life, which has progressed in all phases of life, including jury duty, but has achieved constitutional compulsion on the states only in the grant of the franchise by the Nineteenth Amendment." 332 U.S. at 290, 67 S.Ct. at 1628. A year earlier a divided court decided in Ballard v. United States, 329 U.S. 187, 67 S.Ct. 261, 91 L.Ed. 181 (1946), that in a state where women are eligible for jury service under local law, a *federal* jury panel from which women were intentionally and systematically excluded was not properly constituted, but that was deemed merely "a departure from the statutory scheme." 329 U.S. at 195, 67 S.Ct. at 265.

The Supreme Court then, spanning more than half the time between *Fay* and the present, held in 1961 that a Florida statute which provided that a woman would not be taken for jury duty unless she applied for it was constitutional. Hoyt v. Florida, 368 U.S. 57, 82 S.Ct. 159, 7 L.Ed.2d 118 (1961). The Court was unanimous. Justice Harlan, for the Court, appears to have accepted Florida's statute as being the same as New York's statute. Each " 'gives to women the privilege to serve but does not impose service as a duty.' Fay v.

---

1. The plaintiffs withdrew their original complaint which sought an injunction and would have required a three-judge court. Declaratory relief properly falls to the determination of a single district judge. Nieves v. Oswald, 498 F.2d 802, at 803 (2 Cir. 1974);

Rosario v. Rockefeller, 458 F.2d 649, 651–652 n. 2 (2 Cir. 1972), aff'd, 410 U.S. 752, 93 S.Ct. 1245, 36 L.Ed.2d 1, reh. denied, 411 U.S. 959, 93 S.Ct. 1920, 36 L.Ed.2d 419 (1973).

New York, *supra,* 332 U.S. at 277, [67 S. Ct. 1613]." 368 U.S. at 60, 82 S.Ct. at 162. "We cannot say", wrote Justice Harlan, "that it is constitutionally impermissible for a State, acting in pursuit of the general welfare, to conclude that a woman should be relieved from the civic duty of jury service unless she herself determines that such service is consistent with her own special responsibilities." 368 U.S. at 62, 82 S.Ct. at 162.

Less than six years ago, in 1968, the Court of Appeals for this circuit, accepted *Fay* and *Hoyt, supra,* as governing law, and considered the New York statute valid. United States v. Caci, 401 F. 2d 664, 671 (2 Cir. 1968), cert. denied, 394 U.S. 917, 931, 89 S.Ct. 1180, 22 L. Ed.2d 450 (1969). Only four years ago this Court (Mansfield, J.) again held the statute under attack to be constitutional. Leighton v. Goodman, 311 F. Supp. 1181 (S.D.N.Y.1970).[2]

We are now told by the plaintiffs that in the last three years the Constitution has come to prohibit more than it ever did before. It is true, to be sure, that the Constitution is an expanding instrument in the field of civil rights.

I must address myself, therefore, to what part of the nation's judicial history is said to have been reversed since 1971.

In 1971 Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 was decided. There Chief Justice Burger, for a unanimous court, held that preferential treatment for men over women in appointment as administrators of decedent estates "establishes a classification subject to scrutiny under the Equal Protection Clause." 404 U.S. at 75, 92 S.Ct. at 253. The Court held that persons who were within various classes of relationship to the intestate, could not be dissimilarly treated, for that involved a violation of the Equal Protection Clause.

We learned, then, in the context of appointment as administrator in a probate court, that discriminatory treatment of women made the classification "subject to scrutiny."

The Court in 1973 turned to the Fifth Amendment to find that a federal statute which provided that spouses of female officers of the Air Force could not be "dependents" unless they are in fact dependent for over one-half of their support, while there was no such limitation on female dependents of male officers, was violative of due process. Frontiero v. Richardson, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973).

Four justices (Brennan, Douglas, White and Marshall, JJ.) thought that classifications based on sex, like classifications based upon race, alienage and national origin are inherently suspect and must, therefore, be subjected to close judicial scrutiny. Three justices specifically disavowed the holding that sex was an "inherently suspect" class. Mr. Justice Stewart concurred in the judgment, apparently because the statutes in question worked an invidious discrimination, by way of a conclusive presumption, rather than because sex, itself, is a suspect classification. Mr. Justice Rehnquist dissented from the judgment.

The Court is now asked in the light of the above recital, to hold that Fay v. New York, *supra,* which is indistinguishable, is no longer "good law." A District Court would hardly be tempted even for a moment by such an invitation were it not for the decision of a three-judge statutory court in Louisiana. In Healy v. Edwards, 363 F.Supp. 1110 (E. D.La.1973), probable jurisdiction noted, 415 U.S. 911, 94 S.Ct. 1405, 39 L.Ed.2d 465 (1974), the District Court in a brilliant opinion by Judge Rubin, held it unconstitutional for Louisiana to deprive female litigants of their right to Equal Protection by according an exemption from jury service to women on a basis different from that available to men under substantially similar circum-

---

2. The state courts have also held the statute valid. DeKosenko v. Brandt, 63 Misc.2d 895, 313 N.Y.S.2d 827 (Sup.Ct.N.Y.Co.1970), affd, 36 A.D.2d 796, 318 N.Y.S.2d 915 (1st Dept. 1971).

stances. Finding that *Reed* and *Frontiero, supra,* "eroded" and "crevassed" *Hoyt, supra,* as well as Strauder v. West Virginia, 100 U.S. 303, 310, 25 L.Ed. 664 (1879), the Court concluded, on the basis of the reasoning in *Ballard* (a nonconstitutional case) that "[l]itigants, male or female have a constitutional right to trial by an impartial jury drawn from a cross section of the community." 363 F.Supp. at 1114–1115. So far as *Hoyt* is concerned, the Court concluded: "Hence we consider that *Hoyt* is no longer binding." 363 F.Supp. at 1117.

With great respect for my brethren of the Fifth Circuit, I cannot say with confidence that *Reed* and *Frontiero* have ineluctably overruled *Hoyt* and *Fay.* In their holdings, *Hoyt* and *Fay* are indistinguishable from this case.[3]

Let us approach each plaintiff separately to see the result.

■ NOW does not have standing to speak for its members in a civil rights case. Aguayo v. Richardson, 473 F.2d 1090, 1099–1100 (2 Cir. 1973), cert. denied, 414 U.S. 1146, 94 S.Ct. 900, 39 L. Ed.2d 101 (1974).

■ Anita Murray has no standing because she has not and cannot be harmed herself. She and her class may serve as jurors if they wish to do so.

Caplovitz's claim that he would be called for jury duty less often if women were compelled to serve is true, but as Judge Mansfield said, this "at best presents an extremely thin basis for giving him the right to attack § 599(7)." Leighton v. Goodman, *supra,* 311 F. Supp. at 1182.

■ Ann Pilkington, as a litigant in a New York civil case, does have standing. Healy v. Edwards, *supra,* and cases cited therein. But until the Supreme Court

speaks again, we must be reminded that though Pilkington is a party in an action, Hoyt, a woman, was also a party in a case (a criminal case). Whether the plaintiff or the defendant is a woman is not what counts, but whether there is a proper mix—"a representative cross section"—of jurors. Peters v. Kiff, 407 U.S. 493, 500, 92 S.Ct. 2163, 33 L.Ed.2d 83 (1972).[4] New York's 19% of women jurors in the jury pool compares favorably with Louisiana's 5%. In the actual draw, women can, of course, outnumber men on a particular jury in New York.

■ In *Reed* and *Frontiero,* giving the woman letters of administration or a dependence allowance for her husband hurt no other woman. All could cheer with gusto. All women had benefits conferred by the decisions but no burdens. Here we have not heard from the women who, for whatever their reasons, do not want to be jurors. As a legislator I might force them to serve, and the Legislature may well do so at this session, to make certain that female litigants get a stronger mix. As a District Judge, however, I would be flaunting precedent if, on my own, I upset, on constitutional grounds, the New York statute which the Supreme Court and this circuit have to date held valid.

Courts must be careful not to become superlegislatures as has so often been said. See e. g., Colgate v. Harvey, 296 U.S. 404, 441, 56 S.Ct. 252, 80 L.Ed. 299 (1935). (Stone, J., dissenting opinion). Frustration at the slowness of the legislative process hardly affords justification for an inferior court, in its own unfettered wisdom, based on considerations of Equal Protection, to do the work of the Legislature in the face of articulated and yet unexpunged expressions to the contrary by the Supreme Court. We may get an answer soon in Healy v. Edwards, *supra.*

---

3. The Supreme Court in Alexander v. Louisiana, 405 U.S. 625, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972), had an opportunity to overrule *Hoyt* if it desired to do so, but only Mr. Justice Douglas voted that way, 405 U.S. at 634–635, 92 S.Ct. 1221.

4. Discrimination in *favor* of women has been held to be an "inherently suspect classification." Ballard v. Laird, 360 F.Supp. 643 (S.D.Cal.1973—three-judge court).

In view of the foregoing there is no need to decide whether a class action will lie. The cross motion for summary judgment on behalf of the defendant is granted, and the complaint is dismissed.

It is so ordered.